# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1653

_____

Viktors Ginters; Rochelle Ginters,    *
                                 *

        Plaintiffs – Appellants,    *

                                 *    Appeal from the United States
     v.                             *    District Court for the
                                 *    District of Minnesota.
Denise Frazier, District Director,    *
Citizenship and Immigration Services;    *
Eduardo Aguirre, Director, Citizenship    *
& Immigration Services; Janet    *
Napolitano, Secretary, Department of    *
Homeland Security; Eric H. Holder, Jr.,    *
United States Attorney General,    *
                                 *

        Defendants – Appellees.    *

_____

Submitted: December 15, 2009
Filed: August 5, 2010

_____

Before BYE, BEAM, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

      Rochelle and Viktors Ginters[1] brought an action for declaratory judgment asking the district court to declare unlawful the United States Citizenship and Immigration Service's (USCIS) denial of an I-130 Petition for Alien Relative and

_____

[1]We will refer to the Ginters by their first names for clarity.

asking the district court to provide appropriate injunctive relief. The Ginters appeal the district court's grant of a motion to dismiss their complaint for lack of subject matter jurisdiction. We reverse and remand to the district court for further proceedings.

I

Viktors, a citizen of Latvia, entered the United States on a B-2 visitor's visa on October 28, 1995. He married Denise Harris, a United States citizen, on September 21, 1996, shortly before his visa expired. Harris filed an I-130 Petition for Alien Relative on Viktors's behalf. Viktors petitioned for adjustment of status based on that I-130. Harris subsequently withdrew her petition, alleging in a letter that Viktors had married her for immigration purposes and saying their marriage had never been consummated. As a result of the letter, and of the withdrawal of the I-130, the government denied Viktors's petition for adjustment of status and placed him in removal proceedings on February 9, 1998. On March 16, 1998, Viktors and Harris divorced. On May 9, 1998, Viktors married his current wife Rochelle, who is also a United States citizen.

On June 10, 1998, Rochelle filed a new I-130 on behalf of Viktors. USCIS notified the Ginters of the agency's intent to deny the I-130 petition, whereupon Viktors requested asylum, withholding of removal, and relief under the Convention Against Torture (CAT). The Ginters also supplemented the record in the new I-130 proceeding with more evidence that their marriage was bona fide. USCIS denied the I-130 petition for alien relative on April 27, 1999, on the basis that Viktors had previously entered into a fraudulent marriage for immigration purposes and was consequently ineligible for a visa number. The Ginters filed a motion to reopen the proceedings, which was denied, and an appeal to the Board of Immigration Appeals (BIA), which was dismissed. An immigration judge (IJ) denied Viktors asylum, withholding of removal, and CAT relief on May 20, 2002, but granted voluntary

departure. Viktors appealed the IJ's decision to the BIA, which affirmed. Viktors filed a petition for review, which this court denied.

On February 16, 2006, Viktors filed a habeas petition and a motion for a temporary restraining order in the district court, attacking USCIS's denial of Rochelle's I-130 petition. In addition, on February 21, 2006, Rochelle filed a second I-130 petition, which is the subject of the instant appeal. On March 2, 2006, Viktors filed a request for declaratory judgment, which was consolidated with the habeas petition and the motion for a temporary restraining order. See Ginters v. Cangemi, 419 F. Supp.2d 1124 (D. Minn. 2006) (Ginters I). The district court dismissed the request for declaratory judgment and the motion for a temporary restraining order on March 7, 2006, and transferred the habeas petition to this court, which classified it as a petition for review and dismissed it on July 28, 2006, for lack of jurisdiction. See Ginters v. Gonzales, No. 06-1673, 2006 WL 3371648 (8th Cir. July 28, 2006). Viktors was removed to Latvia in March of 2006.

USCIS investigated the basis for Rochelle's second I-130, which contained a sworn statement by Harris that her letter accusing Viktors of fraud in their marriage was written in anger. In the statement, Harris retracted many of her earlier accusations. USCIS denied the I-130, reaffirming its finding that Viktors had entered into his first marriage for immigration purposes and was therefore ineligible for a visa priority date based on his marriage to Rochelle. Rochelle appealed to the BIA, which affirmed the agency's decision.

The Ginters brought suit in district court challenging the denial of the second I-130 petition and requesting declaratory and injunctive relief. The district court dismissed the action for lack of jurisdiction, finding it was bound by the doctrine of collateral estoppel to give preclusive effect to the district court's decision in Ginters I on the issue. The district court also found the Ginters had procedurally defaulted on their claims by failing to raise them in connection with the removal proceedings and

that the courts do not have jurisdiction to review USCIS's denial of an I-130 petition. This appeal followed.

## II

The district court decided it was bound, under the doctrine of collateral estoppel, to abide by the court's determination in Ginters I that it lacked jurisdiction to review an I-130 petition. It nevertheless reached the question of jurisdiction substantively by determining it had no jurisdiction to review the denial of an I-130 because of the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B)(ii). Finally, it determined the claims were procedurally barred for failure to exhaust administrative remedies.

**Procedural Bar**

The district court found the Ginters were procedurally barred from raising these issues because they failed to request adjustment of status in connection with Viktors's removal proceedings. The government claims this failure deprived the court of the opportunity to review these issues in connection with the appeal from the removal order. However, as a matter of procedure, the denial of the I-130 could not have been raised in a removal proceeding, even had Viktors applied for adjustment of status in that proceeding. An I-130 is not filed with the immigration court but with USCIS. See 8 U.S.C. § 1154 (establishing the framework under which I-130 petitions are filed). Viktors would not have been eligible for adjustment of status until an I-130 was granted and a visa number was available for his use. See Matter of Hashmi, 24 I. & N. Dec. 785, 789-90 (BIA 2009) (discussing approval of I-130 as predicate to consideration for adjustment of status in removal proceedings). Although he could have requested adjustment pending the grant of an I-130, Rochelle's I-130 had already been denied. That decision was appealed to the BIA and affirmed. Raising the adjustment of status issue would have been futile, as the IJ would have had no ability

-4-

to adjust Viktors's status without an approved I-130 petition in place, and an immigration judge has no authority to review USCIS's decision on an I-130 petition. The Ginters did not have another vehicle through which they could have requested review of the I-130 petition and their claims are not procedurally barred.

**Collateral Estoppel**

This court reviews a district court's determination that an issue is precluded from consideration under collateral estoppel, also called issue preclusion, *de novo*. Robinette v. Jones, 476 F.3d 585, 588-89 (8th Cir. 2007). We have determined the doctrine of preclusion may apply to the question of subject matter jurisdiction. Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC, 458 F.3d 733, 737-38 (8th Cir. 2006) (finding federal courts must give full faith and credit to state court determination of subject matter jurisdiction for purposes of preclusion); see also, Pohlmann v. Bil-Jax, Inc., 176 F.3d 1110, 1112 (8th Cir. 1999) (citing for example, Deckert v. Wachovia Student Fin. Servs., 963 F.2d 816 (5th Cir. 1992); Kitces v. Wood, 717 F. Supp. 338 (D. N.J. 1996); 18 J.WM. MOORE ET. AL., MOORE'S FEDERAL PRACTICE § 132.03[5][c] (3d ed. 1999)). Even wrongly decided questions may be precluded from reconsideration under the doctrine. Montana v. United States, 440 U.S. 147, 162 (1979); see Clark v. Clark, 984 F.2d 272, 273 (8th Cir. 1993) ("The doctrines of claim and issue preclusion prevent relitigation of wrong decisions just as much as right ones. Otherwise, the doctrines would have no effect and be useless."); see also, Liberty Mut. Ins. Co. v. FAG Bearings Corp., 335 F.3d 752, 763-64 (8th Cir. 2003) (listing numerous courts which have found an issue is properly precluded from consideration in a subsequent proceeding even where the preceding decision was made in error). Although this court once found the doctrine of collateral estoppel should not extend to pure questions of law, United States v. Red Feather, 541 F.2d 1275, 1278-79 (8th Cir. 1976), the Supreme Court, in Montana v. United States, significantly narrowed the exception for such questions. Montana, 440 U.S. at 162-63. While the Court in Montana left room for an exception where an

unmixed question of law is raised in a successive action involving substantially unrelated claims, id. at 162, neither party has argued the exception applies here.

> In the Eighth Circuit, issue preclusion has five elements: (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

Robinette, 476 F.3d at 589 (quoting Anderson v. Genuine Parts Co., Inc., 128 F.3d 1267, 1273 (8th Cir. 1997)).

There is no dispute in this case that the parties are the same. A review of the pleadings and judgments shows the question of whether the district court had jurisdiction to review the denial of an I-130 was raised in Ginters I. The parties actively litigated the issue in Ginters I. In fact, the opinion indicates the parties submitted supplemental briefing on this precise issue. Ginters, 419 F.Supp.2d at 1129. The Ginters argue there was no final judgment on the merits. However, the Ginters confuse final judgment on the merits of their requests for relief with final judgment on the merits of the question of jurisdiction. The court in Ginters I discussed the jurisdictional question at length and determined it on the merits. See id. at 1128-30. The district court's judgment on that question was valid and final. While the district court opined on other bases for dismissing the action, jurisdiction is a threshold question and must be answered before all other questions. Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation, 495 F.3d 1017, 1020 (8th Cir. 2007). The determination of jurisdiction was therefore essential to the prior judgment.

*Change in Law Exception*

The Ginters primary argument is that the district court should have decided the jurisdictional question anew even if the elements of collateral estoppel are met. "[C]ollateral estoppel extends only to contexts in which the controlling facts and applicable legal rules remain unchanged." Montana, 440 U.S. at 158 (quotation marks omitted). The controlling facts of this case are clearly the same since both I-130 petitions were based on the Ginters's current marriage and both denials were based on Viktors's previous marriage to Denise Harris. However, an exception to collateral estoppel is also triggered when controlling principles of law have changed, Montana, 440 U.S. at 161-62, and the Ginters argue such a change has occurred since Ginters I. They base this contention in part on the Supreme Court's recent decision of Kucana v. Holder, 130 S. Ct. 827 (2010).

The Supreme Court, in Kucana v. Holder, clarified the analysis for determining when a review of a decision is barred under 8 U.S.C. § 1252(a)(2)(B)(ii). Section 1252(a)(2)(B)(ii) bars review of a "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the of the Attorney General or the Secretary of Homeland Security." The Court in Kucana determined the discretionary nature of the decision must be set forth in the statute itself to trigger the bar and that review of a decision is not barred under the statute where discretion is granted by the Attorney General's regulations alone. Kucana, 130 S. Ct. at 836-37.

The district court in Ginters I, using the Eighth Circuit approach now abrogated by Kucana, relied on several regulations to find that 8 U.S.C. § 1252(a)(2)(B)(ii) barred review of the Ginters's I-130 petition. See Ginters, 419 F.Supp.2d at 1130. The Supreme Court, after Kucana, disallows consideration of the regulations when analyzing whether a decision is barred from review as discretionary for the purposes of 8 U.S.C. § 1252(a)(2)(B)(ii). This constitutes a significant change in controlling

legal principles under the "change in law" exception to the doctrine of collateral estoppel. Although <u>Kucana</u> had not been decided at the time the district court determined whether the Ginters should be collaterally estopped from raising this issue, we find it would not be in the interest of judicial economy to force the Ginters to file a new I-130 and begin this process anew in order to have this court consider the recent change in controlling principles of law. We therefore proceed to the merits of the question of jurisdiction.

## Jurisdiction to Review an I-130 Petition for Alien Relative

The government argues this court lacks jurisdiction over all decisions by USCIS, except where specifically conferred by the Immigration and Nationality Act. However, we long ago decided the district courts have jurisdiction to review a decision on the merits of an I-130 petition to classify an alien as a relative of a United States citizen. <u>Sabhari v. Reno</u>, 197 F.3d 938, 943 (8th Cir. 1999). In <u>Sabhari</u>, we found the district court had jurisdiction to hear a complaint for injunctive relief brought after the government denied Sabhari's petition for alien relative on the basis that Sabhari had entered into a fraudulent marriage. <u>Id.</u> at 941. We consider this question again only for the limited purpose of determining whether the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B)(ii), enacted subsequent to our decision in <u>Sabhari</u>, removed our jurisdiction to review a petition for alien relative. In light of the Supreme Court's decision in <u>Kucana</u>, we find the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude judicial review of the denial of an I-130 petition.

A number of circuits have considered this issue since <u>Ginters I</u> was decided and have found the courts retain jurisdiction to review denials of I-130 petitions. <u>See</u> <u>Ayanbadejo v. Chertoff</u>, 517 F.3d 273, 277-78 (5th Cir. 2008), <u>Ruiz v. Mukasay</u>, 552 F.3d 269, 274-276 (2d Cir. 2009), and <u>Ogbolumani v. Napolitano</u>, 557 F.3d 729, 733 (7th Cir. 2009). Under long-established principles, there is a strong presumption in favor of judicial review of administrative action unless otherwise precluded by statute.

Ismailov v. Reno, 263 F.3d 851, 854 (8th Cir. 2001). 8 U.S.C. § 1252(a)(2)(B) removes from judicial review denials of discretionary relief stating:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review --
> . . .
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title [asylum].

Before the Supreme Court's decision in Kucana, most circuits had found the language granting discretion to the Attorney General must appear in the statute itself for the jurisdictional bar to apply. See Khan v. Att'y Gen., 448 F.3d 226, 231-33 (3d Cir. 2006) ("In our view, the Second, Fifth, Ninth and Eleventh Circuit Courts of Appeals have adopted the correct reading of § 1252(a)(2)(B)(ii)."). However, the Eighth Circuit had concluded that "whenever a regulation implementing a subchapter II statute confers discretion upon an IJ, IIRIRA generally divests courts of jurisdiction to review the exercise of that discretion." Onyinkwa v. Ashcroft, 376 F.3d 797, 799 (8th Cir. 2004). The Supreme Court in Kucana required that the discretionary nature of the decision be found in the statute itself in order for the jurisdictional bar to apply. See Hernandez v. Holder, __ F.3d __, __ (8th Cir. 2010) ("the Supreme Court held in Kucana that section 1252(a)(2)(B)'s 'proscription of judicial review' only 'applies ... to Attorney General determinations made discretionary by statute' and not those 'determinations declared discretionary by the Attorney General himself through regulation.' 130 S.Ct. at 831. This court has already recognized the impact of Kucana on our precedent, stating that it 'effectively overruled our decision in Onyinkwa.'").

The statutory provision creating the I-130 process directs that the Attorney General, "[a]fter an investigation of the facts in each case[,]"

> **shall**, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title or is eligible for preference under subsection (a) or (b) of section 1153 of this stitle, **approve** the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant the preference status.

8 U.S.C. § 1154(b) (emphasis added).

Under 8 U.S.C. § 1154(c), an alien who has entered into a previous marriage for immigration purposes is not eligible for approval of an I-130 filed on his behalf.

> Notwithstanding the provisions of subsection (b) of this section **no petition shall be approved** if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c) (emphasis added).

The use of the word "shall" in both sections indicates the Attorney General does not have discretion with regard to either granting an I-130 petition or denying one in the case of marriage fraud. The government argues the statute makes this act discretionary because it requires the Attorney General to "determine" whether someone is an alien relative and whether a marriage was entered into for the purpose of evading immigration laws. The government relied on language in <u>Suvorov v. Gonzales</u>, 441 F.3d 618, (8th Cir. 2006), <u>Ignatova v. Gonzales</u>, 430 F.3d 1209, 1213

-10-

(8th Cir. 2005), and <u>Ebrahim v. Gonzales</u>, 471 F.3d 880 (8th Cir. 2006) for the proposition that a determination of the existence of a sham marriage is discretionary. However, in all three of those cases this court was asked to review the denial of a waiver under 8 U.S.C. § 1186a(c)(4), a section which explicitly states all determinations under that provision, including evidentiary determinations, are "within the sole discretion of the Attorney General." The statutory provisions at issue here contain no such language. In addition, interpreting the statutory language as the government advocates would force this court to classify every decision involving fact-finding by the Attorney General as discretionary and would remove all such decisions from judicial review. That is not a reasonable interpretation in light of the provisions of the Immigration and Nationality Act itself setting forth our standard of review for factual determinations in removal proceedings. <u>See</u> 8 U.S.C. § 1252(b)(4)(B) ("the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").

The district court declined to reach the merits of the Ginters's claims with respect to the denial of their I-130 petition for alien relative because there had been no change in the law when it rendered its decision on the issue of collateral estoppel. However, the Supreme Court has since abrogated the Eighth Circuit's approach to the bar to review of discretionary decisions under 8 U.S.C. § 1252(a)(2)(B)(ii). We, therefore, reverse and remand this case to the district court for consideration of the merits of the underlying action.

III

Reversed and remanded.

COLLOTON, Circuit Judge, dissenting.

I would affirm the district court's dismissal of this action based on the doctrine of collateral estoppel. As the court explains, these same parties litigated the district

court's jurisdiction to review the denial of an I-130 Petition for Alien Relative filed by Viktors and Rochelle Ginters in *Ginters v. Cangemi*, 419 F. Supp. 2d 1124 (D. Minn. 2006) (*Ginters I*), and the district court resolved the issue against the Ginterses. The Ginterses declined to appeal that judgment to this court. The Ginterses then sought to relitigate in the district court the same question of jurisdiction with regard to the denial of a subsequent I-130 petition, even though "[t]he controlling facts of this case are clearly the same." *Ante*, at 7. The district court properly dismissed the case based on collateral estoppel.

The court concludes that collateral estoppel does not apply because "controlling principles of law have changed" since *Ginters I*. The court reasons that *Kucana v. Holder*, 130 S. Ct. 827 (2010), made clear that the limitations on judicial review set forth in 8 U.S.C. § 1252(a)(2)(B)(ii) apply only to determinations of the Attorney General made discretionary by statute, and not those determinations declared discretionary by the Attorney General through regulation. *See Hernandez v. Holder*, 606 F.3d 900, 903 (8th Cir. 2010). *Kucana* thus abrogated *Onyinkwa v. Ashcroft*, 376 F.3d 797, 799 (8th Cir. 2004), which held that § 1252(a)(2)(B)(ii) deprived this court of jurisdiction to review an immigration judge's denial of a motion to continue, because a regulation had purported to make determinations on such motions discretionary. *Id.*

On the question whether to apply collateral estoppel in this case based on *Ginters I*, however, *Kucana* is a red herring. The district court in *Ginters I* never cited *Onyinkwa* or any other now-abrogated Eighth Circuit precedent concerning the effect of regulations that purport to confer discretion on an agency. The court did not hold that it lacked jurisdiction to review the denial of an I-130 petition because the "sham" marriage determination under 8 U.S.C. § 1154(c) was "declared discretionary by the Attorney General himself through regulation." *Kucana*, 130 S. Ct. at 831. Rather, the court reasoned that because a determination about whether a previous marriage was a "sham" for purposes of § 1154(c) required "some subjective weighing of the evidence," the determination was necessarily "discretionary" and insulated from

-12-

judicial review by 8 U.S.C. § 1252(a)(2)(B)(ii). 419 F. Supp. 2d at 1130. The court in *Ginters I* cited a regulation that established the standard of proof for the determination ("substantial and probative evidence"), but the "subjective weighing of the evidence" that underlies the decision in *Ginters I* was necessary whether or not the applicable standard of proof was stated in a regulation.

That the issue resolved in *Kucana* was not a "controlling legal principle" that dictated dismissal in *Ginters I* is demonstrated by *Sabhari v. Frazier*, No. 06-196, 2007 WL 295261 (D. Minn. 2007). There, *after citing and applying* the now-abrogated decision in *Onyinkwa*, the same district court that decided *Ginters I* nonetheless concluded that it *did have* jurisdiction to review the denial of an I-130 petition. The court in *Sabhari* concluded that although the determination whether a marriage was "entered into for the purpose of evading the immigration laws," 8 U.S.C. § 1154(c), requires "some subjective weighing of the evidence," the discretion inherent in that judgment was insufficient to trigger the jurisdictional bar of § 1252(a)(2)(B)(ii). *Id.* at *10. The government declined to appeal in *Sabhari*.

*Ginters I* may have been wrong, but the Ginterses declined to appeal, and of course the doctrine of issue preclusion prevents relitigation of wrong decisions just as much as right ones. *Clark v. Clark*, 984 F.2d 272, 273 (8th Cir. 1993). This court has not addressed whether *Ginters I* or *Sabhari* reflects the correct judgment about whether the "subjective weighing of the evidence" necessary to "determine" a "sham" marriage question under § 1154(c) means that § 1252(a)(2)(B)(ii) deprives a district court of jurisdiction to review the denial of an I-130 petition. *Kucana* does not speak to that question. The applicable legal rule was undecided in this circuit at the time of *Ginters I*, and it remains undecided. There has been no change in the law that justifies an exception to the doctrine of collateral estoppel.

For these reasons, I would affirm the judgment of the district court.

_____