NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0881n.06

No. 11-3251

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Aug 10, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| AMER NUMAN ADI; FIDAA K. MUSLEH, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| UNITED STATES OF AMERICA; JANET | ) | OHIO |
| NAPOLITANO; ERIC H. HOLDER, JR., | ) | |
| Attorney General; ALEJANDRO MAYORKAS; | ) | |
| MARK HANSEN; KIM ADAMS, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

Before: CLAY and GIBBONS, Circuit Judges, and KORMAN, District Judge.[*]

PER CURIAM.

This is an appeal from the district court's order granting the defendants' motion for summary

judgment in an action commenced under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.

The action challenged the denial of an I-130 relative visa petition filed by Fidaa K. Musleh, a United

States citizen, on behalf of her husband, Amer Numan Adi. The petition was denied on the ground

that Mr. Adi had entered into a sham marriage with Linda Woods Adi, his first wife, for the purpose

---

[*] The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

1

of evading the immigration laws. This case has a complicated procedural history which we pass over except to the extent necessary to place the appeal in context.

## BACKGROUND

The first spouse to file an I-130 petition on Mr. Adi's behalf was Ms. Woods Adi, whom he married on May 14, 1980. Mr. Adi and Ms. Woods Adi separated on August 11, 1981, only six months after the visa petition had been granted and he became a lawful permanent resident ("LPR"). Mr. Adi subsequently abandoned his LPR status by moving to Brazil with his current wife Ms. Musleh in 1988 and remaining outside the United States until they returned in 1992. Two years after their return, Ms. Musleh filed the first of three unsuccessful I-130 petitions on Mr. Adi's behalf.

This appeal arises from the denial of the third I-130 petition. The problem Mr. Adi encountered in the protracted effort to regain his LPR status was an affidavit executed by Ms. Woods Adi in 1990 ("1990 Affidavit"), which stated that their marriage was a sham, entered into for the purpose of obtaining lawful permanent residence status for Mr. Adi. In denying the third I-130 petition, the district director of the Citizenship and Immigration Services ("CIS") found that this affidavit was "strongly support[ed]" by the timeline of Mr. Adi's marriage to Ms. Woods Adi and their subsequent separation and divorce. The district director summarized the timeline, as follows:

> The record indicates that [Mr. Adi] and [Ms. Woods] Adi were married on May 14, 1980. [Mr. Adi] had his medical examination completed on August 11, 1980. The form I-130 and form I-485 were filed on December 12, 1980. [Mr. Adi]'s applications were approved on March 3, 1981. According to their divorce decree, filed November 10, 1981, the couple had been separated since August 11, 1981.

The district director also determined that the timeline conflicted with a second affidavit Ms. Woods Adi signed in 2007 ("2007 Affidavit") recanting her statements in the 1990 Affidavit. The district director explained that the 2007 Affidavit "states that they had been married a little over a

2

year before any immigration paperwork was filed . . . . [and] that [Ms. Woods Adi] lived with [Mr. Adi] until April 1982, but again the record proves otherwise." Specifically, the record establishes that the two had been married only seven months before Ms. Woods Adi filed the immigration paperwork and that the two separated on August 11, 1981.

The BIA affirmed the decision of the district director after finding that "the record contains substantial and probative evidence that [Mr. Adi]'s marriage to Linda Woods Adi was fraudulent." In this appeal, appellants claim that (1) the 2007 Affidavit was sufficient to overcome Ms. Woods Adi's 1990 Affidavit, and (2) before making such a determination, the district director should have conducted an in-person interview of Ms. Woods Adi in adjudicating Ms. Musleh's I-130 petition.

## DISCUSSION

### A. Jurisdiction

We address first the issue of whether an appeal from the BIA's decision was properly filed in the district court. Jurisdiction to review a denial of an I-130 petition is conferred on the district court pursuant to Section 702 of the APA, which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof," 5 U.S.C. § 702, unless review is foreclosed by statute or the complained of decision is "committed to agency discretion by law," *id.* § 701(a). Neither of these exceptions apply here.

The statute conferring exclusive jurisdiction over immigration appeals on the courts of appeals is 8 U.S.C. § 1252(a), which is limited solely to appeals from a "final order of removal." The denial of an I-130 application is not such an order. Indeed, it has long been recognized that "the district courts have jurisdiction to review a decision on the merits of an I-130 petition to classify an

3

alien as a relative of a United States citizen." *Ginters v. Frazier*, 614 F.3d 822, 827 (8th Cir. 2010); *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009). We explicitly so held in *Bangura v. Hansen*, 434 F.3d 487, 497, 501-02 (6th Cir. 2006).

Moreover, the complained of decision here is not committed to agency discretion, and therefore, is not barred from review by the Immigration and Nationality Act's "jurisdiction-stripping provision." Under that provision, judicial review is not generally available for any "decision or action of the Attorney General or the Secretary of Homeland Security" which is designated to be within "the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). I-130 petitions are filed pursuant to 8 U.S.C. § 1154, which provides that "[a]fter an investigation of the facts in each case . . . , the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative . . . , approve the petition." 8 U.S.C. § 1154(b). This section does not on its face designate to the Attorney General's discretion the decision whether to grant an I-130 petition. On the contrary, "[t]he use of the word 'shall' in [Section 1154] indicates the Attorney General does not have discretion with regard to either granting an I-130 petition or denying one in the case of marriage fraud." *Ginters*, 614 F.3d at 829.

This language stands in stark contrast to other statutes, which have been found to confer discretion to the Attorney General. So for example, 8 U.S.C. § 1155 provides that "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title." We construed this section to confer discretion because the words "may" and "any time" suggest discretion, and because it "allows revocation for what [the Secretary] deems to be good and sufficient cause." *Mehanna v.*

4

*U.S. Citizenship & Immigration Servs.*, 677 F.3d 312, 315 (6th Cir. 2012) (internal quotation marks omitted). "Thus, the statute leaves it to the Secretary's opinion, judgment, or thought, whether there exists 'good and sufficient cause' to revoke a petition," and reflects the fact that "Congress committed the decision of whether to revoke a visa petition to the discretion of the Secretary." *Id.*

Because the language of § 1154 plainly does not leave the decision whether to grant an I-130 petition to the Attorney General's "opinion, judgment, or thought," *id.*, we agree with our sister circuits that "[d]eterminations regarding the validity of marriage for I-130 petition purposes are not discretionary within the meaning of § 1252(a)(2)(B), and thus are subject to review by courts." *Ayanbadejo v. Chertoff*, 517 F.3d 273, 278 (5th Cir. 2008); *see also Ginters*, 614 F.3d at 829; *Ruiz*, 552 F.3d at 275-76; *Ogbolumani v. Napolitano*, 557 F.3d 729, 733 (7th Cir. 2009).

**B.     Merits of the APA Claim**

The Immigration and Nationality Act mandates the denial of a visa petition made on behalf of any alien whom the Attorney General determines "has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c). A "factual determination by the [BIA] that an alien's marriage was entered for the purpose of gaining entry into the United States is conclusive if it is supported by reasonable, substantial, and probative evidence" when the record is "considered as a whole." *Fang Huang v. Mukasey*, 523 F.3d 640, 649 (6th Cir. 2008) (quoting *Acheampong v. Keisler*, 250 Fed. Appx. 158, 160 (6th Cir. 2007)).

Contrary to the appellants' arguments, our review of the record, which we need not belabor here, satisfies us that (1) the district director did not give conclusive effect to the determinations in prior proceedings, (2) she adequately explained her decision, and (3) her decision was supported by substantial and probative evidence. Indeed, as we have already observed, Ms. Woods Adi's 1990 Affidavit and the timeline of her marriage to Mr. Adi and subsequent divorce and separation provide a basis for inferring that their marriage was a sham. Moreover, none of the indicia that the regulations recognize as providing a basis for finding that a marriage was formed in good faith and both parties commitment to the relationship are satisfied here. *Acheampong*, 250 Fed. Appx. at 161 (citing 8 C.F.R. § 216.5(e)(2)). These indicia include (1) documents demonstrating the commingling of assets and liabilities, (2) the length of time the parties cohabited, (3) birth certificates for children born to the marriage, (4) proof that the petitioner's spouse is listed on insurance policies, property leases, income tax forms, or bank accounts, and (5) testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences. *Id.*; *see also King v. Holder*, 570 F.3d 785, 788 (6th Cir. 2009) (citing *Acheampong* with approval); *In re Soriano*, 19 I. & N. Dec. 764, 766 (BIA 1988).

Nevertheless, in reviewing the evidence before her, the district director thoroughly considered the 1990 and 2007 Affidavits and compared their contents to the other evidence available in the record. Rather than relying on any prior proceedings, she provided a comprehensive (and more than "satisfactory") explanation for her decision that Ms. Woods Adi's 1990 Affidavit was more credible than her 2007 Affidavit. *See In re Tawfik*, 20 I. & N. Dec. 166, 168 (BIA 1990). The reasons she provides, which are reviewed in detail below, are sufficient not only to uphold the denial of the I-130

6

petition on the ground that there was substantial and probative evidence of a prior fraudulent marriage, but also to uphold the decision to not interview Ms. Woods Adi.

In her 2007 Affidavit, Ms. Woods Adi states that she and Mr. Adi had a reception a month after their marriage to celebrate with family and friends, who gave them gifts. The district director notes, however, that not only is there no documentary evidence of a reception, none of the eight affidavits submitted by friends and family mention a reception. Next, Ms. Woods Adi claims that she and Mr. Adi cohabited as husband and wife until April 1982. Again the district director found this claim to conflict with their divorce decree, which was filed November 10, 1981 and indicates that the couple had been separated since August 11, 1981. Indeed, the only record evidence of the couple's cohabitation or commingling of finances is the eight affidavits of friends that were originally submitted in 1994, in support of the first I-130 petition Ms. Musleh filed on Mr. Adi's behalf. The 2007 Affidavit also states that Ms. Woods Adi petitioned for permanent residence status for Mr. Adi after a year of marriage, but as the district director underscored, this statement conflicts with the actual dates of these events. Mr. Adi and Ms. Woods Adi were married on May 14, 1980, and she filed an I-130 petition on his behalf seven months later, on December 12, 1980.

Finally, the district director raised other troubling facts and omissions gathered from the 2007 Affidavit. First, Ms. Woods Adi never disclosed that the person she met soon after, and had children with, was Jamal Deineh -- the person Mr. Adi claimed, in his April 2002 affidavit, roomed with them after their marriage. The district director also noted that Mr. Deineh, who submitted an affidavit in 1995 attesting to the validity of Mr. Adi's marriage to Ms. Woods Adi, also failed to disclose either having an affair with Ms. Woods Adi or living with the couple after their marriage. Second, the district director deduced, from Ms. Woods Adi's statement that she had to leave her "8 year old twin

7

boys unattended while" she spoke with the agents, that her sons would have been born either in 1981 or early 1982, while she was presumably still married to Mr. Adi. In her 1990 Affidavit, however, Ms. Woods Adi had stated that her marriage to Mr. Adi "was never consummated."

In addition to finding that Ms. Woods Adi's statements about her marriage and divorce to Mr. Adi were unsupported by the factual evidence available in the record, the district director also found no evidence to support her 2007 allegation that her 1990 Affidavit had been coerced. The district director held that if Ms. Woods Adi had really been frustrated or angry with the immigration agents, she would have been less likely to cooperate by signing a false affidavit. Considering the record as a whole, we are not convinced that the district director erred in giving Ms. Woods Adi's 1990 Affidavit, which is "strongly" supported by the evidence, greater weight than her 2007 Affidavit, which conflicts with that evidence and is not supported by documentary evidence of the couple's shared life together.

Under all these circumstances, the decision to not interview Ms. Woods Adi was neither arbitrary nor capricious. The credibility of Ms. Woods Adi's 2007 Affidavit is apparent on its face, and it does not raise any questions or doubts that would require the agency to interview Ms. Woods Adi in person. Indeed, appellants have not pointed to any statutory obligation requiring the agency to interview a third-party in adjudicating I-130 petitions.

Appellants' argument that the agency's refusal to interview Ms. Woods Adi made Ms. Musleh's burden to rebut the presumption of a prior fraudulent marriage insurmountable is baseless. Ms. Musleh was free to submit other evidence of the validity of Mr. Adi's marriage to Ms. Woods Adi, including proof of the couple's wedding reception, joint tax returns, proof of commingled assets or liabilities, joint bank accounts, and other proof of a shared life, but failed to do so. Had there been

probative evidence in the record consistent with Ms. Wood's 2007 Affidavit, appellants' argument that the agency's failure to interview Ms. Woods Adi was arbitrary and capricious would be better received.

In sum, the agency's decision to deny the I-130 petition on behalf of Mr. Adi under § 204© is supported by substantial and probative evidence in the record that Mr. Adi's marriage to Ms. Woods Adi was a sham. Accordingly, we affirm the district judge's grant of summary judgment on the appellants' APA claim.