RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0261p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DIANA JOMAA; GEORGINA RIZK,

*Plaintiffs-Appellants*,

*v.*

No. 19-1156

UNITED STATES OF AMERICA, et al.,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 4:18-cv-12526—Linda V. Parker, District Judge.

Decided and Filed: October 9, 2019

Before: MERRITT, DAUGHTREY, and GRIFFIN, Circuit Judges.

———————————

## COUNSEL

———————————

**ON BRIEF:** Nabih H. Ayad, AYAD LAW, PLLC, Detroit, Michigan, for Appellants. Gladys M. Steffens Guzmán, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

———————————

## OPINION

———————————

GRIFFIN, Circuit Judge.

In this immigration case, Georgina Rizk and her daughter appeal the revocation of Rizk's visa petition. The United States Citizenship and Immigration Services ("USCIS") initially granted the petition without taking into account a previous finding that Rizk had entered into a

sham marriage, making her ineligible for a future visa pursuant to § 204(c) of the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1154(c). Once USCIS discovered the error, it revoked Rizk's visa petition and explained that it never should have granted the petition in the first place. After an unsuccessful appeal to the Board of Immigration Appeals ("BIA" or "the Board"), plaintiffs challenged the revocation in the district court, which dismissed their complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). We affirm.

I.

Plaintiff Georgina Rizk is from Lebanon. In 1996, she received deferred admission to the United States as the fiancée of a United States citizen, Mohamed Derbass. Rizk and Derbass married in 1998, and USCIS granted Rizk conditional permanent resident status. When the two divorced in 2001, Rizk "requested a waiver of the requirement to file a joint petition to remove the conditions on residence, Form I-751, based upon the claim that although she had entered the marriage in good faith, the marriage was terminated through divorce or annulment." An immigration officer interviewed Rizk under oath and gave her the opportunity to submit evidence in support of her request for a waiver. Several statements made by Rizk in that interview—concerning the fatherhood of her children and the whereabouts of her alleged first ex-husband, Mohamed Jomaa—conflicted with previous statements she had made in connection with her divorce proceedings. Additionally,

> Ms. Rizk provided no evidence to establish a shared residence with the alleged husband, Mr. Derbass. There also was no evidence presented regarding the commitment of the couple to the marriage, no documentation relating to the degree to which the financial assets and liabilities were combined, and no documentation to establish the length of time of cohabitation.

Based on this lack of evidence and the discrepancies discussed above, USCIS determined that the marriage between Rizk and Derbass "was a sham marriage entered into for the primary purpose of enabling [Rizk] to evade immigration laws and to obtain immigration benefits fraudulently." USCIS denied Rizk's petition with a finding of fraud. Around the same time, Rizk left the United States and returned to Lebanon.

Several subsequent attempts to secure a visa for Rizk followed. First, Mohamed Jomaa filed an I-130 petition on her behalf. USCIS denied that petition "based on the fact that [Rizk]

entered into her prior marriage to Mohamed Derbass for the sole purpose of obtaining an immigration benefit and she was permanently barred from being the beneficiary of an approved immigrant visa based on section 204(c) of the INA." *See* 8 U.S.C. § 1154(c). Mohamed Jomaa filed a second I-130 petition several years later. During its consideration of that petition, USCIS took additional evidence and conducted interviews with Rizk and Jomaa, who stated under oath that they had divorced in 1994 and Rizk "met another person by the name of Mohamed Derbass in a family setup deal so she could come to the United States because her brother lived here at the time." USCIS found inconsistencies in the evidence they submitted, however, and found that "Rizk was married to Mohamed Derbass on November 13, 1998 while still married to Mohamed Jomaa." Because the additional evidence indicated that Rizk had married Derbass "for the sole purpose of obtaining an immigration benefits [sic]" and that she had "provided false testimony to an immigration officer while under oath," USCIS denied the petition.

In 2015, Plaintiff Diana Mohamed Jomaa—Rizk's daughter and a United States citizen—filed a new I-130 petition on Rizk's behalf, "seeking to classify Georgina Rizk as the parent of a United States citizen under 201(b) of [the] INA." *See* 8 U.S.C. § 1151(b). USCIS approved that petition without conducting interviews, and "the previous finding of fraud was not taken into consideration and not included in the decision." USCIS soon discovered its mistake, however, and revoked the visa petition. Plaintiffs appealed that decision to the BIA, arguing that 8 U.S.C. § 1154(c) did not apply to Rizk and should not have been used as a basis to revoke her visa. The Board disagreed, finding that USCIS had correctly determined that Rizk was ineligible for a visa under § 1154(c).

Plaintiffs then filed a complaint in the district court, alleging that the Board's decision violated the Administrative Procedure Act ("APA"), the due process clause of the Fifth Amendment, and the INA. The government moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1) & (6). The district court determined that it had jurisdiction but then held that USCIS's application of § 1154(c) was not arbitrary and capricious and dismissed the complaint. *Jomaa v. United States*, No. 18-CV-12526, 2019 WL 316527, at *3 (E.D. Mich. Jan. 24, 2019);

*see* 5 U.S.C. § 706(2)(A). The court also denied plaintiffs' motion to file supplemental briefing. *Id.* at *4. Plaintiffs timely appealed.

## II.

We begin with jurisdiction. "We review a district court's findings as to whether it had subject matter jurisdiction de novo." *Mehanna v. USCIS*, 677 F.3d 312, 314 (6th Cir. 2012) (citation omitted).

The INA contains a jurisdiction-stripping provision stating that "no court shall have jurisdiction to review" any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." 8 U.S.C. § 1252(a)(2)(B). The government argues that this provision applies to USCIS's decision to revoke Rizk's visa petition, divesting us (and the district court) of subject-matter jurisdiction.

The Supreme Court has "admonishe[d] the courts to read the [INA's] jurisdiction-stripping provisions narrowly—in 'accord[ ] with [the] traditional understanding . . . that executive determinations generally are subject to judicial review.'" *Berhane v. Holder*, 606 F.3d 819, 822 (6th Cir. 2010) (quoting *Kucana v. Holder*, 558 U.S. 233, 251 (2010)) (third and fourth alterations and omission in original). It takes clear and convincing evidence to dislodge the well-settled presumption in favor of judicial review. *Kucana*, 558 U.S. at 251–52. Moreover, the Supreme Court has made clear that § 1252(a)(2)(B) applies "only to Attorney General determinations made discretionary by statute" and not "to determinations declared discretionary by the Attorney General himself through regulation." *Id.* at 237.

One such discretionary determination comes from 8 U.S.C. § 1155: "The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title." In *Mehanna v. USCIS*, we held that "the Secretary's decision to revoke a visa petition under section 1155 is an act of discretion that Congress has removed from our review" under § 1252(a)(2)(B)(ii). 677 F.3d at 315. We reached that conclusion by looking to the plain language of § 1155,

observing that "may," "at any time," and "deem" all "suggest[ ] discretion." 677 F.3d at 315. And "the statute leaves it to the Secretary's opinion, judgment, or thought, whether there exists 'good and sufficient cause' to revoke a petition." *Id.* This language indicates that "Congress committed the decision of whether to revoke a visa petition to the discretion of the Secretary." *Id.*

But § 1155 is not the only relevant provision here. In its letter explaining the visa revocation decision, USCIS specified that it "began this revocation action based on INA 204(c)" (which is codified as 8 U.S.C. § 1154(c)). That section provides that

> Notwithstanding the provisions of subsection (b), no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c). Unlike § 1155, this section does not contain the same discretion-indicating language that we highlighted in *Mehanna*. Quite the opposite. Section 1154(c) contains the word "shall," and "Congress' use of the term '"shall"' indicates an intent to 'impose discretionless obligations.'" *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 400 (2008) (quoting *Lopez v. Davis*, 531 U.S. 230, 241 (2001)).

Several circuits "have found the courts retain jurisdiction to review denials of I-130 petitions." *Ginters v. Frazier*, 614 F.3d 822, 827–28 (8th Cir. 2010) (citing *Ogbolumani v. Napolitano*, 557 F.3d 729, 733 (7th Cir. 2009); *Ruiz v. Mukasey*, 552 F.3d 269, 274–76 (2d Cir. 2009); *Ayanbadejo v. Chertoff*, 517 F.3d 273, 277–78 (5th Cir. 2008)). More specifically, the Fifth Circuit has held that "[d]eterminations regarding the validity of marriage for I-130 petition purposes are not discretionary within the meaning of § 1252(a)(2)(B), and thus are subject to review by courts." *Ayanbadejo*, 517 F.3d at 278 (footnote omitted). And in *Ginters v. Frazier*, the Eighth Circuit analyzed § 1154 and determined that its use of the word "shall" "indicates the Attorney General does not have discretion with regard to either granting an I-130 petition or denying one in the case of marriage fraud." 614 F.3d at 829 (discussing subsections (b) and (c)).

So if USCIS had denied the visa petition here pursuant to § 1154(c) in the first instance—as it did with respect to both of Mohamed Jomaa's earlier petitions on Rizk's behalf—that decision would have been nondiscretionary and thus subject to judicial review.

The critical question then is whether USCIS's decision to revoke the visa petition after discovering its mistake was a discretionary act. We think not. To be sure, denying a visa petition outright and revoking one that was previously granted are different actions. But our inquiry is not formalistic, as nondiscretionary decisions "are within our purview, even where they underlie determinations that are ultimately discretionary." *Privett v. Sec'y, Dep't of Homeland Sec.*, 865 F.3d 375, 379 (6th Cir. 2017) (citation and internal quotation marks omitted). And here, USCIS has made it abundantly clear that its decision to revoke the visa petition was primarily "based on" § 1154(c). If we were to hold this act of error correction discretionary, USCIS could evade judicial review by granting a visa petition it should have denied outright and then immediately revoking it. This would flout Congress's clear grant of subject-matter jurisdiction over decisions to deny petitioners visas because of marriage fraud.

The government avers that our approach "would . . . encourage USCIS to omit any explanation of its § 1155 decision (including any reference to § 1154(c)), thereby ensuring that it is accorded the full measure of discretion granted to it by Congress in § 1252." Perhaps. But rewarding its mistake by creating the perverse incentive discussed above would be an undeniably worse outcome. Moreover, federal courts have a "special obligation" to investigate and determine whether they have subject-matter jurisdiction, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (citation omitted), especially here, where a strong presumption in favor of judicial review looms over the inquiry, *see Kucana*, 558 U.S. at 251–52. Thus, we would view any attempt by the government to hide the ball in this manner with a gimlet eye.

Because USCIS's decision to revoke the visa petition constituted a nondiscretionary act of error correction, we affirm the district court's finding of subject-matter jurisdiction.

III.

Moving to the merits, our review is deferential. While we review the district court's dismissal on Rule 12(b)(6) grounds de novo, *Pulte Homes, Inc. v. Laborers' Int'l Union of N.*

*Am.*, 648 F.3d 295, 301 (6th Cir. 2011), we will not set aside or hold unlawful an agency action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). "An agency decision is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation for the decision." *Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006). Thus, we will not "substitute [our] judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). But "we must also ensure that the agency action is in accordance with the law, such that there is no conflict with the language of the statute relied upon by the agency." *Hosseini v. Nielsen*, 911 F.3d 366, 371 (6th Cir. 2018) (citation and internal quotation marks omitted), *cert. denied sub nom. Hosseini v. McAleenan*, No. 18-1517, 2019 WL 4921422 (U.S. Oct. 7, 2019). And "[i]f the BIA has failed to adequately explain its reasoning, '[t]he reviewing court should not attempt itself to make up for such deficiencies.'" *Ruiz-Del-Cid v. Holder*, 765 F.3d 635, 639 (6th Cir. 2014) (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43) (second alteration in original). "We may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs.*, 463 U.S. at 43 (citation omitted).

Plaintiffs contend that § 1154(c) should not apply to Rizk and point to two administrative decisions in support of their argument: *Matter of Concepcion*, 16 I. & N. Dec. 10 (BIA 1976), and *Matter of Christos, Inc.*, 26 I. & N. Dec. 537 (USCIS AAO 2015). In *Concepcion*, the BIA held that an older version of § 1154(c) did not apply to a visa petitioner who falsified marriage documents but did not enter into an actual marriage. 16 I. & N. Dec. at 11. In *Christos*, USCIS's Administrative Appeals Office held that a petitioner who "submits false documents representing a nonexistent or fictitious marriage, but who never either entered into or attempted or conspired to enter into a marriage . . . is not, by such act alone, considered to have 'entered into' or 'attempted or conspired to enter into' a marriage" under the current version of § 1154(c). 26 I. & N. Dec. at 540. In light of these decisions, plaintiffs argue that § 1154(c) should not apply to Rizk because "USCIS found a sham marriage based on falsified documents rather than a fraudulent marriage ceremony." (emphases omitted).

The BIA acknowledged *Concepcion* and *Christos* but held that "where an actual marriage was performed, even though the marriage was bigamous, it is a marriage entered into for the

purpose of evading the immigration laws, and section 204(c) applies." That is, although Rizk was still married to Mohamed Jomaa when she married Mohamed Derbass—and that marriage "was not legally valid under Michigan law," as the Board found—it still constituted a "marriage" under § 1154(c). The Board cited *Matter of Calilao*, 16 I. & N. Dec. 104 (BIA 1977), in which the petitioner was already married at the time of his sham "marriage" and, relying on *Concepcion*, argued that "no marriage in fact existed" upon which to apply the statute. The Board in that case disagreed, distinguishing *Concepcion* thus:

> Counsel's reliance on Matter of Concepcion is misplaced. There we held, for purposes of section 204(c), that no marriage is entered into when the preference status as a spouse of a lawful permanent resident is accorded on the basis of falsified documents rather than actual marriage. Although the beneficiary had profited from the determination that a marriage existed in the same way as if she had entered into a sham marriage, the marriage did not exist and we held that section 204(c) did not apply. Matter of Concepcion is clearly distinguishable from the present case. Here, according to the sworn statements of the beneficiary and his second wife, an actual marriage was performed. Therefore, we conclude that a marriage was indeed entered into and that section 204(c) does apply.

*Calilao*, 16 I. & N. Dec. at 106.

Plaintiffs contend that this case is more akin to *Concepcion* and *Christos* than *Calilao* because "Rizk never had a marriage ceremony with Mr. Derbass." (emphases omitted). But this argument misses the point, as the difference is not whether a formal ceremony occurred but rather the level of deception involved. The conduct described in *Concepcion* and *Christos* involves creating fraudulent documents in an attempt to fool USCIS into believing a marriage has occurred when it hasn't. Here, Rizk took it one step further by entering into a fraudulent marriage and attempting to deceive not only USCIS but also the state of Michigan—as to her eligibility to marry (and divorce) under its laws. It makes sense to punish the wider-ranging fraud more severely. Congress demonstrated "a growing concern about marriage fraud" by passing the Immigration Marriage Fraud Act of 1986, *Almario v. Att'y Gen.*, 872 F.2d 147, 149 (6th Cir. 1989), which, among other things, expanded the scope of § 1154(c), *see Christos*, 26 I. & N. Dec. at 540. And fraudulent use of the institution of marriage itself—as opposed to use of fraudulent documents—more closely hits at the core of this concern.

Plaintiffs cite *In re Nassouri*, an unpublished decision of the BIA, in support of their argument. No. A79 035 613 - SAN, 2006 WL 3922285, at *2 (BIA Dec. 29, 2006) (per curiam). There, the Board held that § 1154(c) did not apply where the marriage in question "was found to be null and void because, at the time of their marriage, [one participant] was still legally married to someone else." *Id.* And "because no legal marriage actually existed . . . the District Director erred in concluding that the petitioner entered into a marriage for the purpose of evading the immigration laws in violation of section 204(c) of the Act." *Id.* at *3. But one unpublished, contrary case does not meet the arbitrary and capricious standard, which "is the least demanding review of an administrative action." *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cty.*, 286 F.3d 382, 389 (6th Cir. 2002). Plaintiffs' "reliance on unpublished BIA decisions is misplaced as the BIA accords no precedential value to its unreported decisions." *De la Rosa v. U.S. Att'y Gen.*, 579 F.3d 1327, 1336 (11th Cir. 2009); *see Ishac v. Barr*, 775 F. App'x 782, 788 (6th Cir. 2019) ("This is not technically a claim that the BIA violated its own precedent; these decisions are unpublished and, therefore, not formally binding on the agency.") (citing *In re Medrano*, 20 I. & N. Dec. 216, 220 (BIA 1990)).

What's more, the district court pointed out that the Board has held its position articulated in this case for quite some time. *See Jomaa*, 2019 WL 316527, at *3 n.2. In *Ferrante v. INS*, 399 F.2d 98 (6th Cir. 1968), we quoted the following language from a decision of the BIA:

> We are unable to follow counsel's reasoning that a marriage which is void because of a prior existing marriage but which was entered into for the same purpose of evading the immigration laws and where no bona fide husband and wife relationship ever existed, or was ever intended, stands in any better position. We conclude that Section 204(c) of the Immigration Act (Section 1154(c), Title 8, U.S.C.) is applicable and that [the] petition for immediate relative status must be revoked by reason of a marriage determined to have been entered into for the purpose of evading the immigration laws.

399 F.2d at 104 (quoting *Matter of Ferrante*, 12 I. & N. Dec. 166, 169 (BIA 1967)) (internal quotation marks omitted). The Board's decision in *Calilao*, discussed above, tracks as well. 16 I. & N. Dec. at 106.

Accordingly, we conclude that the decision to revoke Rizk's visa petition was not arbitrary and capricious under the APA, and affirm the district court's 12(b)(6) dismissal of the complaint.

IV.

Plaintiffs also raise two constitutional claims for the first time on appeal. They argue that USCIS violated the First Amendment by using the admission that Rizk "met . . . Derbass in a family setup deal so she could come to the United States" as evidence of a sham marriage. According to plaintiffs, this is merely evidence of an arranged marriage, which is "common . . . in Islamic cultures" and "do[es] not require a long period of dating nor incremental increases in commitment by either party." Plaintiffs also argue that USCIS thus "violate[d] Appellants' Equal Protection rights [by] singl[ing]-out an Islamic matrimonial practice with deep cultural and historical roots."

Plaintiffs did not include these purported constitutional claims in their complaint and never moved the district court for leave to amend. On appeal, it is neither the time nor the place for them to do so. These claims are forfeited and we will not consider them. *United States v. Archibald*, 589 F.3d 289, 295–96 (6th Cir. 2009); *see Swanigan v. FCA US LLC*, — F.3d —, 2019 WL 4309672, at *5–8 (6th Cir. 2019).

We are not persuaded by plaintiffs' attempt to excuse their forfeiture, either. According to plaintiffs, their constitutional claims did not become ripe until the government raised a new argument in its reply brief in support of the motion to dismiss, the district court adopted that argument, and the district court also denied plaintiffs' motion to supplement the record, thereby depriving them of an opportunity to address it. But that argument—regarding the applicability of *Concepcion* to subsection 2 of § 1154(c), which Congress added in 1986—in no way affected the ripeness of plaintiffs' new constitutional claims, or prejudiced their ability to timely raise them in any other way.

We also reject plaintiffs' challenge to the denial of their motion to file supplemental briefing, which we review for abuse of discretion. *AES-Apex Emp'r Servs., Inc. v. Rotondo*, 924 F.3d 857, 867 (6th Cir. 2019). Plaintiffs claim that they needed supplemental briefing to address

the government's newly-raised, reply-brief argument, but the district court noted that it had already "examined and resolved *Concepcion*'s application to Plaintiffs' claims," so supplemental briefing was unnecessary. *Jomaa*, 2019 WL 316527, at \*4. We find this to be an appropriate exercise of the district court's "broad discretion to manage its docket," *Am. Civil Liberties Union of Ky. v. McCreary Cty.*, 607 F.3d 439, 451 (6th Cir. 2010), as the court made clear that it had carefully considered the issue and, in its judgment, needed no additional briefing from plaintiffs.

V.

For these reasons, we affirm the judgment of the district court.