*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0249p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SARAI MARTINEZ KING,

                    *Petitioner*,

      *v.*

No. 08-4357

ERIC H. HOLDER, JR., Attorney General,

                    *Respondent*.

On Petition for Review of a Final Order
of the Board of Immigration Appeals.
No. A74 742 863.

Submitted: June 11, 2009

Decided and Filed: June 29, 2009[*]

Before: SUTTON and GRIFFIN, Circuit Judges; LIOI, District Judge.[**]

_____

**COUNSEL**

_____

**ON BRIEF:** Michael E. Piston, PISTON & CARPENTER, P.C., Troy, Michigan, for
Petitioner. Patrick James Glen, U.S. DEPARTMENT OF JUSTICE, Washington, D.C.,
for Respondent.

_____

**OPINION**

_____

    GRIFFIN, Circuit Judge. Petitioner Sarai Martinez King, a native and citizen of

Mexico, seeks review of a decision of the Board of Immigration Appeals ("BIA" or

"Board") affirming an immigration judge's ("IJ") order that she be removed and

---

[*] This decision was originally issued as an "unpublished decision" filed on June 29, 2009. On July 10, 2009, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Sara Lioi, United States District Judge for the Northern District of Ohio, sitting by designation.

1

deported to Mexico. Because sufficient evidence supports the IJ's ruling that petitioner entered into a fraudulent marriage for the purpose of gaining lawful admission to the United States, we deny her petition for review.

I.

In 1993, petitioner entered the United States on a tourist visa. She remained in the country after the temporary visa expired and married Jeffrey King, a United States citizen, in December 1995. Because of the marriage, petitioner was granted permanent resident status on a conditional basis in June 1996. *See* 8 U.S.C. § 1186a. The conditions were removed in October 1998. *See* 8 U.S.C. § 1186a(c); *Almario v. Attorney General*, 872 F.2d 147 (6th Cir. 1989).[1] Eight months later, Jeffrey King filed a complaint for divorce, and the couple was divorced in September 1999.

In July 2002 and December 2005, the former Immigration and Naturalization Service (now the Department of Homeland Security) initiated removal proceedings against petitioner, charging her with fraudulently entering into a marriage for the purpose of procuring admission as an immigrant and willfully misrepresenting in her petition to remove conditions that she and Jeffrey King lived together as husband and wife. *See* 8 U.S.C. § 1227(a)(1)(A) & (a)(1)(G)(ii); § 1182(a)(6)(C)(i). In October 2006, following an evidentiary hearing, the IJ entered a written opinion sustaining all charges and finding that "this marriage was a sham from inception" and that "[t]he parties married for the sole purpose of permitting [petitioner] to remain lawfully in the United States." The IJ ordered that petitioner be removed and deported to Mexico. In September 2008, the BIA affirmed, without opinion, the IJ's ruling. On November 24, 2008, we denied her request for a stay of removal.

---

[1]In *Almario*, we explained conditional status and removal of conditions as follows:

> In enacting the [Immigration Marriage Fraud Amendments of 1986], Congress sought to limit the potential abuse of "immediate relative" status by postponing the receipt of the many benefits afforded an alien married to a citizen . . . . [A]n alien spouse is only entitled to a two year conditional status as a lawful permanent resident. At the end of the two year probationary period, the condition is removed . . . so long as the marriage is *bona fide* and has not been terminated.

872 F.2d at 149.

Sarai Martinez King timely petitions for review.

## II.

## A.

When the BIA affirms the IJ's decision without an opinion, as it did here, we review the IJ's ruling directly. *Huang v. Mukasey*, 523 F.3d 640, 649 (6th Cir. 2008). The order is valid only if "it is based upon reasonable, substantial, and probative evidence." 8 U.S.C. § 1229a(c)(3)(A). The IJ's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Huang*, 523 F.3d at 649. "Under this deferential standard, we may not reverse the Board's determination simply because we would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001).

The deferential "substantial evidence" standard also applies to the IJ's determinations about witness credibility. *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). In other words, "[w]e cannot reverse the IJ's credibility determination . . . unless the evidence *compels* a different conclusion." *Ndrecaj v. Mukasey*, 522 F.3d 667, 675 (6th Cir. 2008) (emphasis added). In assessing a witness's credibility in a removal proceeding, the IJ, by statute, may consider "all relevant factors." 8 U.S.C. § 1229a(c)(4)(C).[2] "[H]owever, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal." *Id*.

---

[2] 8 U.S.C. § 1229a(c)(4)(C) provides:

Considering the totality of the circumstances, and all relevant factors, the immigration judge may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. . . .

In a removal proceeding for a previously admitted alien, the Department of Homeland Security bears the burden of establishing that the alien is deportable by "clear and convincing" evidence.  8 U.S.C. § 1229a(c)(3)(A).[3]  An alien is deportable if she committed "[m]arriage fraud," which includes "fail[ing] or refus[ing] to fulfill the alien's marital agreement which in the opinion of the Attorney General was made for the purpose of procuring the alien's admission as an immigrant."    8 U.S.C. § 1227(a)(1)(G)(ii).

A "marriage was a sham if the bride and groom did not intend to establish a life together at the time they were married."  *Bark v. INS*, 511 F.2d 1200, 1201 (9th Cir. 1975); *Acheampong v. Keisler*, 250 F. App'x 158, 161 (6th Cir. 2007) (unpublished).  The parties' intent may be assessed by circumstantial evidence about the amount of commitment to the marital relationship, including whether assets and liabilities were combined, the duration of cohabitation,  whether children were born to the marriage, and other pertinent evidence.   8 C.F.R. § 216.5(e)(2)(i)-(iv); *Bark*, 511 F.2d at 1202; *Acheampong*, 250 F. App'x at 161.

### B.

Although petitioner separates her petition for review into several issues, they can be reduced to a single question:  Does substantial evidence support the IJ's ruling that petitioner entered into a fraudulent marriage for the purpose of permitting her to remain lawfully in the United States?  The evidence overwhelmingly supports the IJ's decision that she did.

Jeffrey King is homosexual and testified that he married petitioner as a favor to his "very good friend[,]" Judi Haynes.  Haynes, who is paraplegic and blind, employed petitioner's mother as her caregiver. Jeffrey explained that he married petitioner because

---

[3]In her first issue raised in this appeal, petitioner argues that the applicable evidentiary standard was "clear, unequivocal, and convincing" and that the IJ erred in applying a "clear and convincing" standard.  However, petitioner ignores a 1996 statutory amendment to the Immigration and Nationality Act that eliminated the word "unequivocal" from the standard, and she erroneously relies upon two post-1996 cases from this court that apparently conflated, albeit inadvertently, both standards. *See Pickering v. Gonzales*, 465 F.3d 263, 269 n.3 (6th Cir. 2006) ("[T]he current standard is 'clear and convincing evidence.'") (citing 8 U.S.C. § 1229a(c)(3) and 8 C.F.R. § 1240.8(a)).

he believed that the marriage would allow her to become a citizen and "sponsor" her mother to obtain citizenship as well. In this way, petitioner's mother, whom Jeffrey characterized as a "wonderful caregiver," could remain in the United States and continue caring for his friend.

Jeffrey testified that he and petitioner had no discussions about living a life together and did not consummate the marriage, cohabitate, or jointly own property or accounts, although they were friendly and socialized frequently. He explained that the marriage was for legal purposes only and that on their wedding date, the couple executed an antenuptial agreement relinquishing all rights to the other's property. According to Jeffrey, he has lived with David King, whom he describes as his "life partner," since 1997 (when Jeffrey and petitioner were still married and more than a year before petitioner claims she moved out of his home permanently). Jeffrey has three adopted daughters, the first of whom was born in 1997, and he explained that he identified himself as "unmarried" on her adoption application because "[i]n my mind . . . I was a single person." When asked on cross-examination why he should be believed after having entered into an admittedly fraudulent marriage and having made false statements previously, Jeffrey responded that he thought he was doing a "good thing" by "trying to help somebody."

David King corroborated Jeffrey's testimony, lending further support to the IJ's ruling. David testified that he is homosexual, has had a monogamous sexual relationship with Jeffrey since August 1996, and considers their relationship akin to a marriage. When David met Jeffrey in 1996, Jeffrey was the sole occupant of his home, and David moved into Jeffrey's home in August 1997. In 1998, David legally changed his last name to "King." David has credit cards in Jeffrey's name, medical insurance through Jeffrey's work, and shares a savings account with Jeffrey. David is a stay-at-home caregiver for the couple's three adopted daughters. He testified that their first daughter was born in August 1997, and that the process to adopt her, which included home studies by the adoption agency, began in early 1997.

David was aware of the marriage between Jeffrey and petitioner and testified that Jeffrey told him that he married her as a favor to Haynes, whom David characterized as Jeffrey's "best friend." When confronted with a July 1998 letter he wrote vouching for the validity of the marriage between Jeffrey and petitioner, David admitted that the letter was untruthful and explained that he wrote it because he loved Jeffrey and thought he was doing the "right thing" by helping petitioner obtain citizenship.

The testimony of Special Agent Bernadette Cundiff of the fraud unit of the U.S. Immigration and Customs Enforcement independently confirmed Jeffrey's and David's testimony, thereby providing additional support for the IJ's ruling that the marriage was fraudulent. Cundiff was tasked with determining the validity of the marriage. During her investigation, Cundiff discovered that both petitioner and David simultaneously listed Jeffrey's home as their addresses but found that petitioner resided at other locations as well. When Cundiff interviewed Jeffrey's next door neighbor who had previously attested to the validity of the marriage, the neighbor conceded that she did not recognize Sarai Martinez King's name (although she was familiar with her face because she met Sarai Martinez King at a birthday party for Jeffrey's daughter). The neighbor also confirmed that Jeffrey was homosexual and lived with David.

Cundiff interviewed Jeffrey and David. David informed Cundiff that he neither resided at the address he listed in his previous letter on behalf of Jeffrey and petitioner, nor was he "just a neighbor" of Jeffrey's as he initially claimed. Jeffrey's story to Cundiff about why he married petitioner was consistent with his testimony to the IJ. Based on her investigation, Cundiff concluded that the marriage was not viable.

The primary basis for Sarai Martinez King's petition is that she was blinded by love. She asserts and so testified that she married Jeffrey because she loved him, and she thought Jeffrey loved her too. According to petitioner, she met Jeffrey at a Christmas party, dated him for several months, and was sexually intimate with him. "[H]e was like a God to me," she explained. Petitioner contends that Jeffrey's (and David's) testimony to the contrary should not be believed because it was inconsistent with their prior

statements during the immigration and adoption processes and with the documentary evidence.

However, petitioner's "once a liar, always a liar" argument merely begs the question because the charge levied against her was fraud, more specifically marriage fraud, which requires at least two people allegedly engaging in a dishonest act. Because petitioner's story and that of all other witnesses are polar opposites, one by default is untrue.

We conclude that the IJ skillfully ferreted fact from fiction. She prudently acknowledged that petitioner's opposing witnesses, Jeffrey and David, made false statements in the past. In particular, she noted that Jeffrey and David admitted that they previously vouched untruthfully for the validity of the marriage. Nevertheless, the IJ determined that their testimony was credible, basing her finding on several key discrepancies.

Most prominent was petitioner's testimony that she had "no idea" Jeffrey adopted a child while she purportedly was living in his home as his wife. While petitioner agreed that she was aware of the child's presence in the home, she testified that she never asked her husband about the child. The IJ's characterization of petitioner's testimony as "disingenuous" and "implausible" was accurate. Indeed, it would be *extraordinary* for a spouse not only to be unaware that her husband has adopted a newborn (particularly in light of the home studies that were conducted by the adoption agency in the months prior), but also to make no inquiry about a child who is living and being cared for by her husband in her own home.

In addition, the IJ observed that petitioner's representation that she resided with Jeffrey in his home continuously (with the exception of a one-month gap) from August 1997 until November 1998 contradicted the complaint for divorce, which alleged that the couple ceased cohabiting as marital partners in June 1997. Although petitioner attributes that finding to a typographical error in the divorce complaint, she provides no rational explanation for her alleged naïveté concerning her husband's simultaneous romantic relationship and cohabitation with David. In fact, petitioner all but conceded

her case when she testified that she was aware David moved in but thought he was "just a friend."   Further, the IJ found it significant that the couple shared no assets or liabilities.  Petitioner's testimony that she and Jeffrey owned no property together, held no joint bank accounts (checking or savings) or credit cards, had separate medical insurance, and shared no financial obligations supports that finding.

Finally, the IJ credited David's and Jeffrey's testimony, finding that David realized the criminal nature of his prior misrepresentations and that Jeffrey contacted the State of Michigan to insure that his prior false statements would not negatively impact his daughters' adoptions.  The consistent explanations provided by David and Jeffrey for their initial deceptions and later recantations, as well as their desire to help their disabled friend, supports the IJ's finding that they told the truth.

The evidence of record does not compel a contrary conclusion. Petitioner offered no witnesses to corroborate her testimony.  Although she contends that her credibility must be presumed because the IJ failed to make an express finding to the contrary, that argument is factually inaccurate and, in fact, frivolous.  The IJ characterized petitioner's testimony unambiguously as "disingenuous," "implausible," and "not persuasive."  In denying petitioner's request for voluntary departure, the IJ stated:  "[Petitioner's] testimony in this case not only lacked credibility, but was completely implausible. Indeed, the Court would find that [petitioner] did not testify truthfully concerning her residence and the relationship between herself and Jeffrey King."  *Compare Ndrecaj*, 522 F.3d at 671, 674-75 (an immigration judge's statement that "the respondent has not demonstrated to be a credible person" constituted an adverse credibility determination). Even in the absence of this adverse credibility determination, the IJ certainly was not compelled to believe petitioner's implausible account based on her solitary testimony.

### III.

Petitioner's removability was established by clear and convincing evidence, sufficient evidence supports the IJ's ruling that petitioner entered into a fraudulent marriage for the purpose of gaining lawful admission into the United States, and the

record does not compel a contrary conclusion.**[4]** For these reasons, we deny her petition for review.

---

**[4]**The second and third issues raised in petitioner's appellate brief – that she did not enter the United States following a misrepresentation and that any misrepresentation she made about her residence on the form I-751 was not material – relate to the charge alleging that petitioner "willfully misrepresent[ed] a material fact" under 8 U.S.C. § 1182(a)(6)(C)(i). However, these issues were neither raised nor considered on their merits in petitioner's appeal to the BIA. Therefore, we lack jurisdiction to consider them. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right."); *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) (holding that we lack jurisdiction to consider all claims not "properly presented to the BIA and considered on their merits . . . .") (quoting *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004)). Even if we could consider them, the outcome would be unaltered because the IJ's ruling on the remaining charge – marriage fraud – renders petitioner deportable. 8 U.S.C. § 1227(a)(1)(G)(ii).