**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0082n.06

**No. 12-3070**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jan 22, 2013*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| ERNEST ADU-ADJEI, ) | |
| ) | |
| Petitioner, ) | ON PETITION FOR REVIEW |
| ) | OF A FINAL ORDER OF THE |
| v. ) | BOARD OF IMMIGRATION |
| ) | APPEALS |
| ERIC H. HOLDER, JR., Attorney General, ) | |
| ) | |
| Respondent. ) | |
| ) | |
| ) | |

BEFORE: SILER, GRIFFIN, and STRANCH, Circuit Judges.

GRIFFIN, Circuit Judge.

Petitioner Ernest Adu-Adjei, a native and citizen of Ghana, seeks review of the Board of Immigration Appeals' ("Board") decision affirming an immigration judge's ("IJ") removal order. Because substantial evidence supports the IJ's finding that Adu-Adjei entered into a fraudulent marriage in order to obtain permanent residency in the United States, we deny his petition for review.

I.

A.

Ernest Adu-Adjei entered the United States in September 2003 pursuant to a student visa. Friends introduced him to Charlay Bay in late April 2006, and the two married a week later, on

May 5, 2006. Three weeks into the marriage, Adu-Adjei applied to adjust his immigration status based on an immigrant visa petition Bay filed concurrently on his behalf.

Several months later, Bay and Adu-Adjei appeared before Citizenship and Immigration Services ("CIS") for an interview in connection with Bay's visa petition. During an interview with District Adjudication Officer Allan Shaub, Bay admitted that her marriage to Adu-Adjei was not "real" and that she had been paid to marry and help him obtain permanent residency in the United States. Shaub notified Julie Hetzel, a CIS fraud and national security officer, who briefly spoke with Bay before contacting Immigration and Customs Enforcement Senior Special Agent Kenneth Teich.

Teich interviewed Bay and Adu-Adjei separately. Bay again confessed that she had been paid to marry Adu-Adjei and help him obtain permanent residency. Teich then interviewed Adu-Adjei, who denied that the marriage was a fraud. According to Teich, Adu-Adjei's story of how the two met was "painful to listen to" and in no way matched what Bay had told him earlier. When Teich said that Bay had already confessed and suggested that Adu-Adjei be truthful, Adu-Adjei requested a lawyer. The interview promptly ended. Teich arrested Adu-Adjei and filed a report documenting the interview (Form I-213). Bay formally withdrew her visa petition.

CIS denied Adu-Adjei's adjustment application because an immigrant visa was not immediately available to him, Bay having the same day withdrawn her visa petition.

B.

The Department of Homeland Security ("DHS") initiated removal proceedings against Adu-Adjei, charging him as removable on the ground that he was inadmissible at the time he tried to

adjust his status, *see* 8 U.S.C. § 1227(a)(1)(A); he was allegedly inadmissible because he tried to procure an immigrant visa by fraud, *see id.* § 1182(a)(6)(C)(i).

In July 2007, Adu-Adjei appeared before an immigration judge for an initial hearing. The IJ continued the matter after Adu-Adjei said he needed time to retain an attorney. The IJ advised that he would ask Adu-Adjei at the next hearing to admit or deny DHS's allegations. Adu-Adjei appeared again before the IJ three months later, this time with counsel. His attorney sought a continuance because she was unprepared to admit or deny the allegations, Adu-Adjei having hired her just the day before. The IJ admonished Adu-Adjei for his delay, but nevertheless granted a one week continuance. At the next hearing, Adu-Adjei admitted some of the factual allegations, denied others, and denied the removability charge.

One year later, the parties appeared for an evidentiary hearing. DHS counsel indicated that he would offer into evidence Special Agent Teich's Form I-213 and Bay's written withdrawal of her visa petition. Adu-Adjei's counsel objected to the admission of any of Bay's hearsay statements contained in the two documents. Citing *Dallo v. INS*, 765 F.2d 581 (6th Cir. 1985), counsel argued that hearsay is inadmissible in removal proceedings unless DHS can show that, despite its reasonable efforts, it is unable to locate the declarant for cross-examination. Counsel asserted that DHS had made no efforts to secure Bay's in-court testimony. DHS counsel responded that his notes indicated that the colleague who prepared the file had tried to contact Bay, but was unsuccessful. When the IJ mentioned that he would later have to make a finding regarding the government's efforts to obtain Bay's testimony before it would admit and consider her hearsay statements, DHS counsel asked for

a continuance to try again to obtain Bay's testimony or have the colleague (who was then absent) testify regarding her efforts to locate Bay. The IJ continued the hearing over Adu-Adjei's objection.

In May 2009, Bay, Officer Shaub, Special Agent Teich, and Adu-Adjei testified at an evidentiary hearing. After hearing the testimony, the IJ sustained the removability charge, finding by clear and convincing evidence that Adu-Adjei entered into a fraudulent marriage in order to secure an immigrant visa. He found Bay, Teich, and Shaub credible and deemed Adu-Adjei's testimony "unconvincing." Adu-Adjei was ordered removed to Ghana. The Board upheld the IJ's decision. This timely petition for review followed. We stayed Adu-Adjei's removal pending a decision on his petition.

## II.

When the Board affirms an IJ's decision but adds its own remarks, as it did here, we review both decisions together. *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1149 (6th Cir. 2010). We review questions of law de novo and consider factual findings using the substantial-evidence standard. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Under this standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Singh v. Gonzales,* 451 F.3d 400, 403 (6th Cir. 2006); *see also Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (noting that § 1252(b)(4)(B) "basically codifies the Supreme Court's substantial evidence standard").

## III.

### A.

Adu-Adjei first challenges the Board's finding that he sought to procure an immigrant visa through marriage fraud. The Board's finding in this regard is one of fact, so we review it for substantial evidence. *Fang Huang v. Mukasey*, 523 F.3d 640, 649 (6th Cir. 2008). DHS had the burden to prove Adu-Adjei's removability by "clear and convincing evidence." 8 U.S.C. § 1229a(c)(3)(A). Combining our substantial-evidence review standard with DHS's underlying burden of proof, Adu-Adjei's task before us is to demonstrate that a reasonable adjudicator would be compelled to conclude that, contrary to the Board's finding, the record does not contain clear and convincing evidence that he engaged in marriage fraud. *See Hassan v. Holder*, 604 F.3d 915, 925 (6th Cir. 2010); *see also Hana v. Gonzales*, 400 F.3d 472, 475–76 (6th Cir. 2005).

"A marriage was a sham if the bride and groom did not intend to establish a life together at the time they were married." *King v. Holder*, 570 F.3d 785, 788 (6th Cir. 2009) (internal quotation marks omitted); *see In re Soriano*, 19 I. & N. Dec. 764, 765 (BIA 1988). The parties' conduct before and during the marriage is relevant to their intent at the time they married. "The inquiry involves deeply personal questions, including those that probe the couple's courtship, their shared experiences, their living arrangements after marriage, and the degree to which they share assets and liabilities." *Surganova v. Holder*, 612 F.3d 901, 904 (7th Cir. 2010); *cf.* 8 C.F.R. § 216.5(e)(2).

B.

Overwhelming record evidence supports the Board's finding that Adu-Adjei and Bay never intended to establish a life together. First of all, there is direct evidence of fraud. Bay testified that the marriage was a fraud, that she married Adu-Adjei in exchange for money, and that she never

intended to establish a life with him. She said she was initially promised $4,000 to marry Adu-Adjei and petition for a visa on his behalf.[1] She received $1,300 prior to the CIS interview, $800 of which came immediately after the two were married. The IJ found Bay credible, and the Board did not disturb that finding. The record does not compel a contrary credibility finding. Bay's credited testimony by itself is enough to support the Board's decision on substantial-evidence review. *See, e.g.*, *Singh v. Holder*, 433 F. App'x 512, 513 (9th Cir. 2011); *Gazdikova v. Holder*, 423 F. App'x 731, 732 (9th Cir. 2011).

Apart from the direct evidence of fraud, substantial circumstantial evidence also supports the Board's finding. To begin with, the timing of the wedding and the parties' conduct preceding it are highly suggestive of fraud. Adu-Adjei and Bay obtained a marriage licence one day after they first met. And one purpose of their initial meeting, according to Bay, was to set a date for the civil ceremony. When the two met at city hall to obtain their marriage license, it was just the second time they had ever seen each other. One week later, they married. No courtship, friendship, or shared experiences (other than their initial meeting, which Adu-Adjei said lasted roughly five hours) preceded the marriage.

The parties' conduct during marriage also demonstrates a lack of intent to start a life together. Adu-Adjei and Bay never lived together. When they were married, they resided 600 miles apart—Adu-Adjei was attending school in Atlanta, Georgia, and Bay lived in Newark, Ohio. Once,

---

[1]Bay said at her CIS interview that she was promised $2,500. She explained at the evidentiary hearing that the amount changed from $4,000 to $2,500.

when Adu-Adjei visited Ohio two months into the marriage, he stayed with friends in Columbus instead of staying with Bay, who lived only 40 miles away. Bay believed the girl with whom Adu-Adjei stayed when he visited was his girlfriend. (Adu-Adjei denied the relationship.) The next time Adu-Adjei returned to Ohio was in September 2006, for his interview before CIS. Bay never visited Adu-Adjei in Atlanta. The couple was never intimate together, and thus the marriage was never consummated. Adu-Adjei never met Bay's teenage daughter, even though she lived with Bay at the time Bay married Adu-Adjei.

Furthermore, Adu-Adjei and Bay did not speak often, and, when they did speak, it was only for the purpose of furthering their fraud. Bay testified that the first time she spoke with Adu-Adjei on the phone after they were married was months after the civil ceremony. The purpose of the call was to set a time to take pictures to submit to CIS in support of Bay's visa petition. Adu-Adjei also called Bay to notify her of the upcoming CIS interview. The two met and "traded information for when [they] went to Immigration."

Adu-Adjei responds to this evidence by saying the IJ should have disbelieved Bay because her testimony was inconsistent with her past statements, she could not remember how much money she was promised to marry Adu-Adjei, and she was otherwise "extremely unreliable." The IJ acknowledged that Bay's testimony was not fully consistent with her written statement withdrawing her visa petition and that Bay was addicted to cocaine in 2001 and had felony convictions. Nevertheless, the IJ found that Bay credibly testified that she married Adu-Adjei only for money. He noted that her testimony was consistent with the testimony from Shaub and Teich regarding

Bay's inability during the CIS interviews to answer basic questions about the marriage. Again, the record does not compel a contrary credibility finding.

Adu-Adjei also claims he was unaware Bay was being paid to marry him and that he should not be punished for Bay's deception. He testified to having pure intentions, claiming he loved Bay because she was "like a mother to [him]" and "extremely nice." He claimed the two spoke on the phone and texted "all the time." Finally, he testified that he had no reason to commit fraud to obtain his residency, because he was already lawfully present in the United States. The IJ found Adu-Adjei's testimony regarding his intentions and professed ignorance of the fraud "unconvincing," noting in particular that Adu-Adjei had admittedly lied during the CIS interview regarding when and under what circumstances he met Bay. A reasonable adjudicator would not be compelled to credit Adu-Adjei's testimony over Bay's, which was more consistent with the evidence indicative of marriage fraud. Substantial evidence supports the Board's finding that Adu-Adjei attempted to procure a visa by fraud.

### IV.

Next, Adu-Adjei argues that the IJ erred when he granted a continuance to allow DHS to locate Bay for the evidentiary hearing. Without the continuance, he contends, Bay's hearsay statements would have been excluded, and the government, lacking admissible evidence of marriage fraud, could not have met its burden. We review for an abuse of discretion the IJ's decision to continue the proceedings. *Young Hee Kwak v. Holder*, 607 F.3d 1140, 1143–44 (6th Cir. 2010). Such an abuse exists if the decision "was made without a rational explanation, inexplicably departed

from established policies, or rested on an impermissible basis such as invidious discrimination."
*Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006) (internal quotation marks omitted).

The IJ did not abuse his discretion. Adu-Adjei primarily argues that DHS counsel simply was unprepared for the hearing and that lack of preparation is not "good cause" for a continuance. *See* 8 C.F.R. § 1003.29 ("The Immigration Judge may grant a motion for continuance for good cause shown."). While the government may have been unprepared, Adu-Adjei offers no authority for the proposition that an IJ abuses its discretion when it affords an unprepared party a continuance. Indeed, Adu-Adjei was granted two continuances early in the proceedings due to his lack of preparation (and once despite a warning from the IJ that he be prepared at the next hearing). Moreover, Bay's testimony was central to the government's case, and the basis for its request for a continuance—to allow it more time to prepare its case—was permissible. We cannot say that continuing the proceedings at DHS's request was outside the "range of plausible assessments" from which the IJ was permitted to choose. *King v. Taylor*, 694 F.3d 650, 660 (6th Cir. 2012) (internal quotation marks omitted).

V.

For these reasons, we deny the petition for review.