**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0426n.06

Case No. 14-3813

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jun 08, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KULWINDER DHALIWAL, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| LORETTA E. LYNCH, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

**BEFORE: NORRIS, SUTTON, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge**. Petitioner Kulwinder Singh Dhaliwal ("Dhaliwal") seeks review of a final order of removal by the Board of Immigration Appeals ("BIA"). The only aspect of the BIA's decision that Dhaliwal challenges is the denial of a discretionary waiver pursuant to § 216(c)(4)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1186a(c)(4)(B). A waiver, if granted, would dispense with the requirement that Dhaliwal submit a joint petition to demonstrate his marriage to a United States citizen, the basis for his conditional residence in the United States, was entered into in good faith. For the reasons stated herein, we **AFFIRM** the BIA's findings for substantive evidence and **DISMISS** the remainder of the petition for review.

I.

Dhaliwal, a native and citizen of India, was admitted to the United States on December 17, 1999, at Detroit, Michigan, as a conditional resident based on a marriage entered into on January 16, 1999 with Sukhvir Khera ("Sukhvir"), a United States citizen. The marriage ended roughly nineteen months later in divorce on August 24, 2000, triggering a rebuttable presumption of marriage fraud. 8 U.S.C. § 1227(a)(1)(G)(i) (imposing a rebuttable presumption of marriage fraud when a marriage rendering immigration benefits ends before two years). An unrebutted presumption would render Dhaliwal removable. *Id*. § 1227(a)(1)(G) ("An alien shall be considered to be deportable as having procured a visa or other documentation by [marriage] fraud (within the meaning of section 1182(a)(6)(C)(i) of this title) and to be in the United States in violation of [the INA]").

To add insult to injury, less then a month after the divorce Sukhvir withdrew the I-130 petition which allowed Dhaliwal entry to the United States, and submitted an affidavit stating that Dhaliwal had only married her for immigration benefits. Around the same time, Dhaliwal's I-751 petition to lift the conditions on his permanent residence also came due. When conditional permanent residence is based on marriage to a United States citizen, within two years after initial entry into the United States, the alien spouse is required to file a joint petition (I-751) swearing that the marriage was (1) legal, (2) had not been annulled or terminated, and (3) was not entered into for immigration purposes. 8 U.S.C. §§ 1186a(a)(1), (c)(1)(A), (d)(1)(A), (d)(2)(A), 8 C.F.R. § 216.4(a)(1). Dhaliwal requested a "discretionary" or "hardship" waiver that would excuse him from the joint filing requirement and allow him file a Form I-751 petition without Sukhvir's involvement. 8 U.S.C. § 1186a(c)(4)(B). To be eligible for a discretionary waiver, an alien must first demonstrate that he entered into a "qualifying marriage . . . in good faith." *Id*.

For purposes of qualifying for a discretionary waiver under section 216(c)(4)(B), "[t]he central question is whether the bride and groom intended to establish a life together at the time they were married." *See, e.g., Matter of Laureano*, 19 I. & N. Dec. 1, 2-3 (BIA 1983); *Matter of McKee*, 17 I. & N. Dec. 332, 334-35 (BIA 1980). Their conduct after the wedding is also relevant. *Laureano*, 19 I. & N. Dec. at 3; *see also Acheampong v. Keisler*, 250 F. App'x 158, 161 (6th Cir. 2007) ("Conduct after the marriage is evidence of the couple's state of mind at the time they married."). In determining whether an alien entered into a qualifying marriage in good faith, a factfinder considers evidence of the amount of commitment by both parties to the marital relationship. 8 C.F.R. § 216.5(e)(2). Such evidence includes documentation of comingled financial assets, length of time during which the parties cohabitated after the alien received conditional resident status, and any children born to the couple. *Id*. at (i)-(iv); *see also King v. Holder*, 570 F.3d 785, 788 (6th Cir. 2009).

Accordingly, the facts of the couple's meeting, wedding, life as a married couple, and divorce are all relevant considerations. In this case those facts are complicated and confusing— in large part due to inconsistent witness testimony and possible language barriers. Piecing together facts from the record, the story begins with Sukhvir. Before Dhaliwal, Sukhvir was married to Inder Khera ("Inder") in February 1989. The couple had three children before their divorce in March 1998. In December 1998, Sukhvir and her children traveled from Michigan to visit her family's hometown in India, where Dhaliwal (eleven years her junior) lived with his parents. Early into her six-week visit, Sukhvir was introduced to Dhaliwal by relatives as a prospective bride. With their parents' encouragement, the two agreed to wed and were married soon afterwards in a traditional ceremony on January 16, 1999. Both claim that they entered into the marriage intending to live together for the rest of their lives. Following a honeymoon in

India, the newlyweds lived together for the remainder of Sukhvir's time in India until she and her children returned to the United States in January 1999. Within weeks of her return, Sukhvir successfully petitioned for Dhaliwal to join her through an I-130 petition. Dhaliwal arrived in the United States on December 17, 1999. At this juncture, the accounts of their relationship diverge significantly.

Dhaliwal maintained that upon his arrival he was met at the airport by his sister and parents, but that it was his wife and her children who took him to their home, where he remained until mid-April 2000, at which point he was thrown out so Sukhvir could reunite with her ex-husband. On the other hand, Sukhvir claims that (1) she did not meet Dhaliwal at the airport, (2) she was unaware of his presence in the United States until he telephoned her from a Social Security office a few days after his arrival, (3) he never came to live with her or explained why he would not come when they spoke over the telephone, and (4) she saw him for the first time in the United States in court after she filed for divorce.

The story converges once more with the couple's divorce on August 24, 2000, followed by Sukhvir's withdrawal of her I-130 petition and re-marriage to Inder in January 2001. Roughly two years after his arrival in the United States, Dhaliwal filed a form I-751 requesting a discretionary waiver of the joint filing requirement on the basis that he entered into his marriage with Sukhvir in good faith despite the marriage ending in divorce. He filed several documents in support, including: (1) a copy of his wedding invitation, (2) a letter from his divorce attorney, and (3) sixteen affidavits from family and friends.

On December 3, 2004, Dhaliwal appeared for an interview with an immigration officer ("IO") in support of his discretionary waiver request, along with several witnesses and additional documentary submissions. In finding that Dhaliwal was not eligible for a discretionary waiver,

the IO also determined that Dhaliwal had not rebutted the presumption of marriage fraud triggered by the short duration of his marriage. The IO based his decision primarily on Sukhvir's sworn affidavit—though he also noted several inconsistencies in Dhaliwal's own documentary evidence, the fact that Dhaliwal had known Sukhvir for "less than a week when he married her," and the timing of Dhaliwal's marriage, coincident with his sister's naturalization and his parents' immigration to the United States. *See* AR 731. Accordingly, the IO filed Dhaliwal's case with the Department of Homeland Security ("DHS") Anti-Fraud Unit on January 13, 2005.

On May 30, 2007, DHS issued Dhaliwal a notice of intent to deny his discretionary waiver request, explaining that he "failed to prove that [he] entered into a good faith marriage with [Sukhvir]" through any documentation he submitted. AR 745. The notice further explained that Dhaliwal "provided no proof that [he] comingled any assets with [Sukhvir] or that [he] ever lived with her and her children." *Id*. at 746. As a result, DHS granted Dhaliwal thirty days to submit additional evidence in rebuttal of DHS's intended denial of his I-751 waiver request—in effect, a second chance. On July 26, 2007, Dhaliwal responded stating, amongst other things, that his marriage was real because he knew the names of Sukhvir's children. Dhaliwal also submitted affidavits from two friends (stating they had visited Dhaliwal and Sukhvir or received a visit from the couple in 2000) and a religious cleric (stating he had seen the couple at the Sikh temple on occasion) signed in the United States in 2004. Dhaliwal did not file any additional documents demonstrating that he lived with Sukhvir or that they comingled finances and relied solely on the submitted affidavits as proof of co-habitation. On September 13, 2007, DHS denied Dhaliwal's request for a discretionary waiver after finding that none of the proffered documents established that the marriage was entered into in good faith.

On December 5, 2007, DHS instituted removal proceedings by issuing a Notice to Appear ("NTA"). The NTA charged Dhaliwal with removability as an alien (1) whose conditional permanent resident status was terminated as of December 16, 2001, and (2) who had engaged in marriage fraud because he obtained admission "into the United States with an immigrant visa . . . procured on the basis of a marriage entered into less than 2 years prior to such entry . . . and which, within 2 years subsequent to any admission" was "judicially annulled or terminated," without having "establishe[d] to the satisfaction of the Attorney General that such marriage was not contracted for the purpose of evading any provisions of the immigration laws." 8 U.S.C. § 1227 (a)(1)(G)(i); *see* AR 859.

Appearing before an Immigration Judge ("IJ") in Cleveland, Ohio, on April 1, 2008, Dhaliwal (1) admitted the factual allegations in his NTA; (2) conceded removability on the basis that his conditional resident status was terminated; but (3) denied removability on the basis of marriage fraud. 8 U.S.C. § 1227(a)(1)(D)(i), (G)(i). Dhaliwal indicated that he was—once again—seeking a discretionary waiver, and alternatively, adjustment of his status through the I-130 filed by his father, after Dhaliwal's divorce from Sukhvir.

On May 29, 2008, DHS submitted to the IJ the record of proceedings relating to Dhaliwal's previous request for a discretionary waiver. On August 19, 2010, DHS supplemented its filings with additional documents. On May 2, 2012, Dhaliwal filed evidence in support of his waiver request with the IJ, which included largely the same materials submitted to DHS, along with Sukhvir's deposition testimony from their divorce proceedings.[1]

Following an initial hearing on February 9, 2012, Dhaliwal received a merits hearing on October 22 and October 25, 2012. The government's only proposed witness was Sukhvir. In

---

[1] During Dhaliwal's divorce proceedings, Sukhvir denied that the couple went on a honeymoon and consummated their marriage; but later recanted her deposition testimony as "false statement[s]" stemming from anger and betrayal. AR 151; 156-60.

response, Dhaliwal requested a subpoena to compel the testimony of Inder, stating it was "relevant and necessary . . . with respect to the issue[s] of the I-751 'Good Faith Marriage' waiver and the outstanding marriage fraud charge." AR 790. Dhaliwal also testified on his own behalf, and offered the testimony of his sister, his brother-in-law, his mother, and two friends to prove that Dhaliwal and Sukhvir entered into their marriage in good faith.

Sukhvir's credibility was questioned from the outset because she had perjured herself in the past. The IJ also found Dhaliwal's testimony and that of his sister, brother-in-law, mother, and two friends to contradict their own affidavits as well as each other's testimony. The IJ found Inder—whose testimony was ultimately unfavorable to Dhaliwal's case and bolstered Sukhvir's testimony—to be the only credible witness. The IJ found all of Dhaliwal's other witnesses to be non-credible as to whether he actually lived in a marital relationship with Sukhvir from January 2000 through March or April of 2000. Therefore, the IJ denied a discretionary waiver based on the determination that Dhaliwal failed to demonstrate that his marriage had been entered into in good faith and also found Dhaliwal failed to rebut the presumption of marriage fraud and was therefore removable under 8 U.S.C. § 1227(a)(1)(G)(i).

Dhaliwal appealed the IJ's denial of his discretionary waiver, but not the IJ's finding that he was removable on the basis of marriage fraud. In a decision dated July 23, 2014, the BIA reviewed the IJ's factual findings (including the question of the parties' intent at the time of their marriage) and his adverse credibility determinations for clear error. Ultimately the BIA affirmed the IJ's findings that Dhaliwal was removable on the grounds that his conditional resident status was terminated and because he engaged in marriage fraud. Dhaliwal filed a timely petition for review in this Court, once again focusing exclusively on the waiver, asserting that: (1) substantial evidence did not support denial of his discretionary waiver request; (2) the IJ erred in his adverse

credibility determinations regarding Dhaliwal and his "supportive"[2] witnesses; and (3) the IJ was biased and violated Dhaliwal's due process rights. Pet'r's Br. at 4.

## II.

Generally, we have jurisdiction over petitions for review of final removal orders pursuant to 8 U.S.C. § 1252. *See* 8 U.S.C. § 1252(a)(1), (5). However, jurisdiction is contested in this case, specifically with respect to Dhaliwal's second and third claims above. In a similar discretionary waiver case, we held that we lack jurisdiction to review any decision or action of the Attorney General, the authority for which is specified under 8 U.S.C. § 1186a(c)(4) to be in the discretion of the Attorney General.[3] *Johns v. Holder*, 678 F.3d 404, 406 (6th Cir. 2012). This includes the authority to determine what evidence is credible and the weight to be given that evidence. Therefore, we lack jurisdiction over Dhaliwal's claim that the IJ erred in his adverse credibility findings against Dhaliwal.

We also lack jurisdiction over Dhaliwal's claim that the IJ violated due process "by applying standards of credibility unevenly across supportive and unsupportive witnesses to cherry pick evidence unfavorable to [Dhaliwal] in violation of [his] right to a fair hearing." Pet'r's Br. at 4. While Dhaliwal's due process challenge survives the jurisdictional bars of 8 U.S.C. §§ 1186a(c)(4) and 1252(a)(2)(B)(ii), it runs into a more garden-variety road block— Dhaliwal failed to present this challenge to the BIA. Exhaustion is a statutory prerequisite to this Court's jurisdiction, which requires that any claim be presented first to the BIA. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right . . . ."); *see also Liu v. Holder*, 560 F.3d

---

[2] It is regrettable that the only credible witness in this case was "unsupportive" to Dhaliwal's argument; however, that witness was nevertheless compelled to testify at Dhaliwal's behest.

[3] The Attorney General has delegated his authority to grant discretionary waivers to the BIA. *See Kucana v. Holder*, 558 U.S. 233, 239 (2010).

485, 494 (6th Cir. 2009) (citing *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004) (holding that only claims which are "properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal.")). Because Dhaliwal never raised this claim before the BIA, we decline to review it now.

Though we lack "jurisdiction to second guess the [BIA's] assessment of the weight and credibility of the evidence," we do have "jurisdiction to review whether substantial evidence supports the [BIA's] decision that [petitioner's] marriage was not bona fide." *Johns*, 678 F.3d at 407. Therefore, we next consider Dhaliwal's remaining claim: that the factfinder's denial of a discretionary waiver was not supported by substantial evidence

III.

Accepting the BIA's decisions as to the weight and credibility of the evidence, we consider the BIA's factual findings under the substantial evidence standard. Substantial evidence review is highly deferential, and factual findings are conclusive unless a reasonable adjudicator would be compelled to conclude to the contrary. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 & n.1 (1992); 8 U.S.C. § 1252(b)(4) (adopting and codifying the standard of review articulated in *Elias-Zacarias*, 502 U.S. at 481).

The credible evidence in this case is limited and we find that it does not compel a contrary conclusion to the one ultimately reached. *Klawitter v. I.N.S.*, 970 F.2d 149, 152 (6th Cir. 1992) (citing *Elias-Zacarias*, 502 U.S. at 481). Upon reviewing the IJ's finding that the only "really good evidence is the fact that [Dhaliwal] consummated the marriage on many occasions during [his] so-called honeymoon, and that he lived with [Sukhvir] somewhat less than three weeks in India," the BIA properly found that there was insufficient evidence of a bona fide marriage. AR 4-5; 69.

Aside from Inder's testimony, there was no consistent evidence, documentary or otherwise, of the couple's married life during the period between Dhaliwal's receiving conditional residence and his divorce from Sukhvir. *Id.* During his testimony, Inder explained that he had a short-lived marriage with a much-younger woman in India while he was divorced from Sukhvir. While Inder may not win any awards for chivalry, his testimony was deemed "entirely credible," if ultimately unhelpful to Dhaliwal's burden of proving a bona fide marriage. AR 80. Indeed, Inder repeatedly and consistently denied that he had ever seen Dhaliwal at Sukhvir's house during his weekly visits to see his children, or that he had ever threatened Dhaliwal or otherwise interfered with Dhaliwal's marriage to Sukhvir—all of which conflicts with Dhaliwal's own testimony. Inder's testimony does not conclusively establish that Dhaliwal's marriage was fraudulent, but it hardly establishes the opposite. In the absence of any other credible evidence, Dhaliwal fails to meet his burden of proof. 8 U.S.C. § 1186a(c)(4).

Even if we were to credit Dhaliwal's testimony as true, he admits that the evidence in this case consists of conflicting stories, and does not offer anything more. *See* Pet'r's Br. at 20. By Dhaliwal's account, he was a bona fide bridegroom who became "unwittingly involved in a sordid love triangle," by marrying a woman who divorced him to remarry her former husband, and has since engaged in an inexplicably vindictive assault on his immigration status. AR 748. For her part, Sukhvir maintains that she was pressured into a hasty marriage while recovering from a recent divorce, only to discover—when he refused to come live with her—that her new husband had merely used her to obtain a green card. Disillusioned and angry, she divorced the scoundrel and reconciled with her ex, but not before informing the immigration authorities of the perceived deception. Regardless of whose story we find more believable, there are numerous

significant inconsistencies between them. Accordingly, we find the evidence could support many conclusions, including the one at which the BIA arrived.

IV.

For the foregoing reasons, we **AFFIRM** the BIA's findings for substantive evidence and **DISMISS** the petition for lack of jurisdiction over Dhaliwal's credibility and due process challenges.