NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0471n.06

No. 24-3312

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Nov 26, 2024

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| PAPA CHEIKHOU DIOP, | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) | APPEALS |
| Respondent. | ) | |
| | ) | OPINION |

Before: GILMAN, READLER, and BLOOMEKATZ, Circuit Judges.

PER CURIAM. Papa Cheikhou Diop petitions this court for review of an order of the Board of Immigration Appeals (BIA) affirming, without opinion, the denial of his application for deferral of removal under the Convention Against Torture (CAT). As set forth below, we deny Diop's petition for review.

Diop, a native and citizen of Senegal, entered the United States as a lawful permanent resident in October 2011, when he was 16 years old. Diop lived in Detroit, Michigan, with his parents and siblings.

Diop was arrested in April 2019 after a federal grand jury in the Eastern District of Tennessee returned an indictment charging him and others in connection with a drug-trafficking operation. *United States v. Diop*, No. 19-cr-65 (E.D. Tenn.). Diop ultimately pleaded guilty to conspiracy to distribute and possess with intent to distribute fentanyl and heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846, and he was sentenced to time served.

In July 2023, the Department of Homeland Security served Diop with a notice to appear in removal proceedings, charging him with removability because he had been convicted of (1) an aggravated felony and (2) a controlled substance offense. *See* 8 U.S.C. § 1227(a)(2)(A)(iii), (a)(2)(B)(i). Appearing before an immigration judge (IJ), Diop admitted the factual allegations set forth in the notice to appear and conceded both charges of removability.

Diop applied for deferral of removal under the CAT. *See* 8 C.F.R. § 1208.17(a). Diop asserted that, if he returned to Senegal, he would be harmed or killed because he had denounced the president and joined the opposition party, the African Patriots of Senegal for Work, Ethics, and Fraternity (PASTEF). In his application, Diop described himself as being "known as the biggest [PASTEF] member."

At the hearing on his application, Diop and his brother testified about his support for the PASTEF party. Diop began following the PASTEF party in 2017 and, after watching videos about the PASTEF presidential candidate, became a member of the party. Diop organized online meetings and posted comments and live videos on social-media sites such as Facebook and Instagram.

Diop and his brother also testified about their trip to Senegal in December 2018. While visiting family in Senegal, Diop attended a campaign meeting for the PASTEF party with approximately 1,000 other people. After the meeting, Diop took a taxi to the building where his family was staying about an hour away. When he got out of the taxi, Diop was attacked by three men, who beat him, robbed him, and stabbed him in the side. According to Diop, the men recognized him from his social-media activity because they said his name and knew that he was a member of the PASTEF party and lived in the United States. The men fled in a car when a neighbor began to yell. A few nights later, some individuals attempted to break into the building where

Diop's family was staying, but were scared off when a shopkeeper screamed at them. Diop, who did not see these individuals, believed that the attempted break-in was related to the earlier attack.

Diop maintained that he continues to oppose the president in Senegal and support the PASTEF party. Diop claimed that, if he returned to Senegal, he would be recognized and arrested at the airport based on his social-media activity and then taken to a camp, where he would be beaten and possibly killed.

At the conclusion of the hearing, the IJ denied Diop's application for deferral of removal under the CAT and ordered his removal to Senegal. The IJ found that Diop and his brother were not credible witnesses, identifying inconsistencies and implausibilities in their testimony. The IJ also noted that Diop had failed to provide evidence to corroborate key portions of his claim. The IJ concluded that Diop had therefore failed to prove that it was more likely than not that he would be tortured upon his return to Senegal.

Diop appealed the IJ's decision. The BIA affirmed the IJ's decision without opinion.

This timely petition for review followed. Diop argues that the IJ erred in determining that Diop did not provide credible testimony or sufficient corroboration. Diop also contends that this case should be remanded based on new country conditions—the recent inauguration of a member of the PASTEF party as the president of Senegal.

Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision as the final agency determination. *See King v. Holder*, 570 F.3d 785, 787 (6th Cir. 2009); *Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005). We review the agency's factual findings, including credibility determinations, for substantial evidence, meaning that the agency's findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the

contrary." 8 U.S.C. § 1252(b)(4)(B); *see Slyusar v. Holder*, 740 F.3d 1068, 1072-73 (6th Cir. 2014); *El-Moussa v. Holder*, 569 F.3d 250, 255-56 (6th Cir. 2009).

A noncitizen who is subject to the provisions for mandatory denial of withholding of removal,[1] but is otherwise entitled to CAT protection, "shall be granted deferral of removal to the country where he or she is more likely than not to be tortured." 8 C.F.R. § 1208.17(a). However, "[a]n adverse credibility finding is usually fatal to" a noncitizen's ability to prove entitlement to CAT protection. *Luna-Romero v. Barr*, 949 F.3d 292, 294 (6th Cir. 2020) (quoting *Rubio-Mauricio v. Barr*, 782 F. App'x 444, 446 (6th Cir. 2019)). Pursuant to the REAL ID Act, "[t]here is no presumption of credibility" In favor of an applicant seeking relief from removal. 8 U.S.C. § 1229a(c)(4)(C). "In evaluating the testimony of the applicant or other witness in support of the application, the [IJ] will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof." *Id*. § 1229a(c)(4)(B). The IJ may base the credibility determination on "the inherent plausibility of the applicant's or witness's account," the consistency between the applicant's statements and other evidence in the record, and any other relevant factor. *Id*. § 1229a(c)(4)(C). The IJ may require corroborating evidence to supplement even credible testimony "unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id*. § 1229a(c)(4)(B).

As the IJ pointed out, Diop "provided absolutely no evidence whatsoever of his social media presence." Diop argues that he provided a reasonable explanation for his inability to provide such evidence—he no longer had access to his social-media accounts because they were shut down

---

[1] Diop does not dispute that his conviction of an aggravated felony constitutes a "particularly serious crime," rendering him ineligible for asylum and withholding of removal. *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), (b)(2)(B)(i), 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2).

by Facebook. According to Diop, the IJ took "judicial notice" that social-media accounts can be shut down. Although the IJ stated that he "would be prepared to take judicial notice" of the suspension of former President Trump's Twitter account because that fact was "so public that I think it's common knowledge," the IJ went on to state that "I have no ability to take any administrative notice on Facebook shutting down" Diop's accounts. In any event, Diop failed to explain why he could not have submitted other evidence of his social-media activity, such as notices about the deactivation of his accounts, his more recent posts on other accounts, or letters from his followers.

Diop also asserts that the IJ recognized that the Senegalese government may allow the torture of supporters of the PASTEF party, but went on to find that he could not prove that he would be targeted specifically, even though he had already been targeted and attacked in Senegal. As the IJ recognized, country-conditions evidence showing political unrest and human-rights violations in Senegal is insufficient to establish that Diop himself "faces a particularized and likely threat of torture at the hands of a public official, or with the consent or acquiescence of a public official." *Vasquez-Rivera v. Garland*, 96 F.4th 903, 911 (6th Cir. 2024) (quoting *Marqus v. Barr*, 968 F.3d 583, 587 (6th Cir. 2020)). Diop claimed that the authorities in Senegal would recognize him based on his social-media activity and would arrest and torture him for his support of the PASTEF party. But Diop failed to provide any evidence corroborating his social-media presence or his support for the PASTEF party and otherwise failed to testify credibly in support of his claim. In the absence of credible testimony and corroborating evidence, the record does not compel the conclusion that Diop himself is more likely than not to be tortured in Senegal.

Diop submitted medical and police reports in support of his application. According to Diop, the IJ's finding that these documents were "fabricated" was not based on any evidence.

But the IJ did not specifically find that these documents were fabricated, instead observing that these documents lacked the information that would normally appear in a medical record or police report. The medical report, purportedly issued by the doctor in Senegal who treated Diop after his beating and stabbing, provided no information about Diop's injuries and treatment, used atypical syntax, and appeared to be a certificate excusing Diop from work for 40 days even though he did not live or work in Senegal. The purported police report appeared to be a narrative prepared by Diop about the attack rather than an official record prepared by a police officer. No reasonable adjudicator would be compelled to conclude that these documents sufficiently supported Diop's testimony or independently satisfied his burden of proof.

Diop also fails to address the inconsistencies, implausibilities, and other discrepancies that the IJ identified with respect to Diop's claim. In any event, substantial evidence supports the IJ's adverse-credibility determination. For example, Diop testified that one of his attackers stabbed him and that his father took him to the hospital for treatment the next morning. But Diop failed to mention in his application that he was stabbed. The IJ also found it implausible that a father would find his son "left for dead" and then delay seeking treatment until the next morning because there would be a long wait at the hospital. These inconsistencies and implausibilities involving a key part of Diop's claim support the IJ's adverse-credibility determination.

Diop finally contends that this case should be remanded based on new country conditions—the recent inauguration of a member of the PASTEF party as the president of Senegal. According to Diop, this case should be remanded to the IJ for additional testimony and evidence as to how members of the PASTEF party are being treated by members of the former ruling party and whether the PASTEF party is able to protect its members. In light of the IJ's adverse-credibility determination, remand would be futile. *See Karimijanaki v. Holder*, 579 F.3d 710, 721 (6th Cir.

2009).  Furthermore, Diop should file a motion to reopen his removal proceedings if he wishes to present new evidence to the agency.  *See* 8 U.S.C. § 1229a(c)(7); 8 C.F.R. §§ 1003.2(c), 1003.23(b)(3).

For these reasons, we **DENY** Diop's petition for review.